

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-08-031-CV

BRADLEY S. MURRAY                                                    APPELLANT

V.

KAREN K. MURRAY                                                      APPELLEE

-----------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

-----------

## OPINION

-----------

### I. Introduction

In two issues, Appellant Bradley S. Murray ("Brad") challenges the trial court's order clarifying the 2003 decree of divorce from his ex-wife, Karen K. Murray ("Karen"). We affirm the trial court's order as modified.

## II. Factual and Procedural History

On August 4, 2003, the trial court signed an agreed decree of divorce ending the marriage of Brad and Karen. Post-divorce litigation began in 2007. We discuss only the details of the 2003 and 2007 proceedings that are necessary to the disposition of this appeal.

### A. Background Facts

Brad is an independent broker for Ameriplan. Ameriplan is a multiple-level marketing company that provides discounted rates on health services. As an independent broker, Brad sells monthly memberships in Ameriplan's discounted health plans and recruits other brokers to do the same. The members and brokers recruited by Brad, as well as members and brokers recruited by them, and so on, are Brad's "downline." At the time of the divorce, there were thousands of members and brokers in Brad's downline. His gross income was approximately $27,000 per month.[1]

---

[1] Unfortunately, the exhibits used during trial, detailing exactly how an independent broker with Ameriplan earns commissions, were destroyed by the county records management division. It is our understanding, based on the record and the briefs, that an independent broker's commission consists of a percentage of the income generated by the brokers he recruits in addition to a percentage of the income that the brokers in his downline receive from the various levels of their downlines.

2

## B. Divorce Proceedings

The sole issue before the trial court during the divorce proceedings was the division of the residual income generated by the downline that existed as of the date of divorce, August 4, 2003. During trial, Karen introduced evidence that she and Brad had jointly built the business and that the downline was the product of both her and Brad's contributions to the business. Karen argued that the downline, as of the date of divorce, should be treated as a book of business and therefore, the residual income generated by that downline should be divided monthly based on the agreed upon 60/40 split.[2] Brad, however, urged the trial court to value the business and to allow him the opportunity to buy Karen out; or, in the alternative, to sell the business and split the proceeds 60/40. The trial court ruled in favor of Karen and signed an agreed decree of divorce that had been proposed by Brad's counsel. Neither party appealed the decree. The divorce decree provides in pertinent part:

> The Court finds that Bradley S. Murray is an independent contractor for Ameriplan USA and therefore entitled to receive residual income based on business generated prior to August 4, 2003. IT IS ORDERED AND DECREED that Bradley S. Murray is awarded forty percent (40%) of said residual income and Karen K. Murray is awarded sixty (60%) of said residual income. . . . IT IS ORDERED

---

[2] Brad and Karen agreed before trial to a 60/40 split of the marital assets and liabilities, with sixty percent going to Karen and forty percent to Brad.

AND DECREED that Bradley S. Murray will issue to Karen K. Murray a check equal to Sixty percent of the monthly Residual Income based upon the book of business as of August 4, 2003.

## C. Clarification Proceedings

After the divorce, the amount Karen received monthly began to steadily decline. Consequently, in July 2007, she filed a petition for enforcement alleging that Brad had violated the terms of the decree or, in the alternative, that the decree was ambiguous and required clarification. The trial court held two hearings on the matter, found that there was an ambiguity, and entered a clarifying order.

In the order, the trial court recognized that "[a] 'book of business' is an identified group of persons or entities who are brokers in the AmeriPlan USA business, and all of the commissions (current and future) earned by the brokers in that group." The clarification also defined "residual income" as:

[T]he stream of continuing payments that are earned by Brad and/or Karen from the commissions (current and future) earned by the brokers within a book of business. Residual income arises from all sources of income relating to or derived from an identified book of business, including commissions earned by the brokers within that identified book of business from any source whatsoever.

The order then divided Brad's sources of commissions into three categories:

4

**[Group A:** This] category represents the specific persons or entities that are identified as the base and down-line brokers of Brad and Karen existing on the date of August 4, 2003.

**[Group B:** This] category represents the new persons or entities that Brad alone has developed as brokers after the date of August 4, 2003.

**[Group C:** This] category represents those new persons or entities that were developed as brokers by the brokers within the Group A category after the date of August 4, 2003.

Finally, the order awarded Karen sixty percent of the residual income earned as a result of the income and commissions that may be payable to, or received by, the brokers within Group A from any source whatsoever, from and after the date of August 4, 2003; however, the order also stated that Karen was not entitled to receive a share of the residual income earned as a result of Group B or C's income.

Subsequently, Brad filed a request for findings of fact and conclusions of law in addition to a motion for new trial. When the court did not file findings or conclusions, Brad filed a notice of past due findings of fact and conclusions of law. The trial court denied Brad's motion for a new trial and ultimately held that findings of fact and conclusions of law were not appropriate. This appeal followed.

### III. Standard of Review

5

We review the trial court's ruling on a motion for enforcement or clarification of a divorce decree under an abuse of discretion standard. *In re Marriage of McDonald*, 118 S.W.3d 829, 832 (Tex. App—Texarkana 2003, pet. denied). The trial court abuses its discretion when it (1) acts unreasonably, arbitrarily, or without reference to any guiding rules or principles or (2) erroneously exercises its power by making a choice outside the range of choices permitted the court by law. *Id*. When, as here, the trial court makes no separate findings of fact or conclusions of law, we draw every reasonable inference supported by the record in favor of the trial court's judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). We must then affirm the judgment of the trial court on any legal theory that finds support in the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984). We review questions of law, including implied legal conclusions, de novo. *See State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996).

## IV. Trial Court's Duty to File Findings of Fact and Conclusions of Law

In his first issue, Brad asserts that the trial court erred by failing to file findings of fact and conclusions of law with respect to the clarification order. Specifically, he argues that the trial court should have filed findings of fact and conclusions of law because: (1) filing is required by statute, (2) the trial court relied upon evidence presented at trial to make the findings contained in the

6

order, and (3) findings and conclusions would aid the parties and this court. We disagree.

## A. Applicable Law

Under rule 296, upon proper request, the trial court has a mandatory duty to file findings of fact and conclusions of law. Tex. R. Civ. P. 296; *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996); *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989). The purpose of rule 296 is to give a party a right to findings and conclusions finally adjudicated after a conventional trial on the merits before the court. *IKB Indus., Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997). However, findings and conclusions are not required in every case. *See id.* (explaining that findings and conclusions are often unnecessary and requiring them in every case would unduly burden the trial courts). In fact, we previously held that a trial court's duty to file findings of fact and conclusions of law does not extend to post-judgment hearings. *Johnson v. J.W. Constr. Co.*, 717 S.W.2d 464, 468 (Tex. App.—Fort Worth 1986, no writ) (reasoning that because a post-judgment hearing is not a trial, and because rule 296 specifically states that findings of fact and conclusions of law are mandatory in "any case *tried* in the district or county court without a jury," rule 296 is inapplicable to post-judgment hearings).

7

## B. Analysis

Here, Karen filed a petition for enforcement and a motion to clarify. After holding two hearings on the matter, the trial court found that the original decree was not specific enough to be enforceable by contempt and entered a clarifying order. *See Gainous v. Gainous*, 219 S.W.3d 97, 108 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (holding that under section 9.008 of the Texas Family Code, a court that renders a divorce decree retains limited, post-judgment jurisdiction). Consequently, because the hearings in this case were post-judgment hearings, and because a trial court's duty to make findings of fact and conclusions of law does not extend to post-judgment hearings, we hold that the trial court did not abuse its discretion by denying Brad's request for findings of fact and conclusions of law. *See Johnson*, 717 S.W.2d at 468. Accordingly, we overrule Brad's first issue.

## V. Trial Court's Authority to Clarify the Divorce Decree

In his second issue, Brad contends that the trial court lacked authority to enter the clarification order because the decree was not ambiguous. In the alternative, Brad argues that the trial court erred by entering the clarifying order and by awarding Brad's post-divorce income to Karen. We agree in part.

## A. Applicable Law

Generally, a court that renders a divorce decree retains continuing subject-matter jurisdiction to clarify and to enforce the decree's property division. Tex. Fam. Code Ann. §§ 9.002, 9.008 (Vernon 2006). Specifically, the court has continuing jurisdiction to "render further orders to enforce the division of property made in the decree of divorce . . . and to assist in the implementation of or to clarify the prior order." *Id*. § 9.006(a).

However, there are limitations on the enforcement and clarification powers of the trial court that rendered the divorce decree. For example, a trial court may not "amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment." Tex. Fam. Code Ann. § 9.007(a). Thus, clarification orders cannot be used to make a substantive change in a divorce decree after it becomes final even if it contains substantive legal error. *See Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003) (declaring that party's "remedy for a substantive error of law by the trial court was by direct appeal, and he cannot now collaterally attack the judgment"). More simply put, res judicata applies to the property division in a final divorce decree, just as it does to any other final judgment, barring subsequent collateral attack even if the divorce decree improperly divided the property. *Baxter v. Ruddle*, 794 S.W.2d 761, 762 (Tex. 1990); *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987).

9

A subsequent order may, however, clarify a decree to correct an ambiguity so that the parties to that decree are able to comply with its terms. *See* Tex. Fam. Code Ann. §§ 9.008(b) (declaring that the court may enter a "clarifying order" to enforce compliance with an insufficiently specific decree), 9.006(a), (b); *Shanks*, 110 S.W.3d at 447. To determine whether a subsequent order clarifies or modifies a decree, "we must interpret the decree to determine not what the trial court should have done but, if possible, what the trial court actually did." *Shanks*, 110 S.W.3d at 447.

Agreed judgments are interpreted in accordance with contract law. *McKnight v. Trogdon-McKnight*, 132 S.W.3d 126, 130 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We construe divorce decrees, like judgments, as a whole to harmonize and give effect to the entire decree. *Shanks*, 110 S.W.3d at 447. If, when read as a whole, the divorce decree's terms are unambiguous, we must effectuate the order in light of the actual language used. *Id.* On the other hand, if the divorce decree's terms are ambiguous, that is, subject to more than one reasonable interpretation, we must review the record along with the decree to aid in interpreting the judgment. *Id.* Furthermore, if the decree is ambiguous, we adopt the construction that correctly applies the law. *Id*. Whether a divorce decree is ambiguous is a question of law subject to de novo review. *Id.*

10

**B. Analysis**

We must first determine whether the divorce decree's award of Karen's share of the residual income is reasonably susceptible to more than one meaning. *Shanks*, 110 S.W.3d at 447.

The decree awards Karen sixty percent of Brad's residual income based (1) "on business generated prior to August 4, 2003" and (2) "upon the book of business as of August 4, 2003." Brad, argues that the decree is unambiguous because "business generated" and "book of business" can only mean "payments made."

However, contrary to Brad's assertion, the trial court did not limit the award in the divorce decree to "commissions on payments made prior to August 4, 2003," but instead, used broader terms such as "business generated" and "book of business." Therefore, based on the decree's failure to ascribe meanings to the terms "business generated" and "book of business" regarding residual income, we find that the decree is subject to more than one reasonable interpretation and thus, is ambiguous. Accordingly, we hold that the trial court correctly exercised its authority to enter a clarifying order. *See Guerrero v. Guerra*, 165 S.W.3d 778, 784 (Tex. App.—San Antonio 2005, no pet.) (holding that the trial court properly entered a clarifying order where provision of property settlement in divorce decree failed to define "after-

11

acquired property," making provision susceptible to two meanings and thus, ambiguous).

Having determined that the decree's valuation of Karen's share of the residual income is ambiguous, we must next consider whether the trial court's interpretation of the provision is supported by the record and in compliance with the law. *Shanks*, 110 S.W.3d at 447.

During the clarification hearings, the trial court focused on two particular phrases in the original divorce decree that, depending on the parties' interpretations, would result in an increase or decrease in the amount of money Karen received monthly. The phrases at issue were: "residual income based on business generated prior to August 4, 2003" and "[r]esidual [i]ncome based upon the book of business as of August 4, 2003."

At the hearings, Brad argued that the trial court intended for the decree to provide that Karen is to receive sixty percent of the "business generated" by the downline as of the date of divorce. More simply put, not only was a snapshot taken of the downline but also of the income generated by that downline; therefore, neither the downline nor the income will ever increase. Consequently, the amount Karen receives on a monthly basis, as a percentage of the residual income, also will never increase. Brad supported his argument

by pointing out that any income outside the snapshot is a mere expectancy and therefore would be his separate property.

Karen, on the other hand, argued that the trial court intended for her to receive future income generated from the "book of business" as of August 4, 2003. In other words, the phrase "book of business" referred to the downline that existed as of August 4, 2003 and not to the actual income generated by that downline; therefore, although the number of members and brokers in the downline will never increase, the income generated by that existing downline can and, as a result, the amount Karen receives as her share of the residual income will also increase.

Karen supported her argument by pointing out that at the close of trial in 2003, the trial court noted the lack of legal authority presented on the issue, but went on to state that it would take into consideration *Alsenz,* a case presented by Karen's counsel during trial. *Alsenz v. Alsenz*, 101 S.W.3d 648 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).[3] Karen asserted that the

---

[3] In *Alsenz,* the issue was whether royalties during the marriage on a patent owned by the husband prior to the marriage were community or separate property*. Id.* The *Alsenz* court stated that "the income stream generated during the marriage from [the husband's] inventions patented before the marriage was a 'revenue' and a 'fruit' of his separate property; therefore, we hold that it was community property." *Id.*

13

trial court relied on this case in rendering its ruling awarding her sixty percent of the residual income.

After hearing arguments from both sides, the trial court agreed with Karen's interpretation and entered an order to clarify the ambiguity. As previously mentioned, the clarification order (1) defined "book of business" and "residual income," (2) divided Brad's sources of commissions into three categories, and (3) awarded Karen sixty percent of the residual income earned within the Group A category, including any growth in the income resulting from brokers and members being added after the divorce.

On appeal, Brad argues that the trial court erred in adopting Karen's interpretation of the decree because it does not comply with the law in that it awards Karen a portion of his future earnings which are not community property. Karen however, responds that there was sufficient evidence from which the trial court could rule that the "residual income," including any growth, was community property.

To support his argument, Brad directs our attention to two cases *Cunningham* and *Loaiza*. *Loaiza v. Loaiza*, 130 S.W.3d 894 (Tex. App.—Fort Worth 2004, no pet.); *Cunningham v. Cunningham*, 183 S.W.2d 985 (Tex. App.—Dallas 1944, no writ). In *Cunningham*, the appellate court held that the wife was not entitled to the husband's future commissions on insurance policies

because the right to receive commissions was contingent on the customers renewing their policies and the husband's continued employment by the agency. *Cunningham*, 183 S.W.2d at 985. Brad argues that the facts in *Cunningham* are analogous to the facts in this case because any future commissions he earns are contingent upon the members and brokers within his downline paying their monthly dues and on him remaining an active broker for Ameriplan.

In *Loaiza*, a major league pitcher signed a lucrative contract during his marriage that required him to perform services after the marriage ended. *Loaiza*, 130 S.W.3d at 906–07. This court held that despite the fact that the contract was signed during marriage, the income was not earned until the services were performed post-divorce. *Id*. at 909–10. Brad claims that *Loaiz*a is also analogous to this case because he works on contract with Ameriplan and is required to sell at least one membership per month to maintain his right to commissions.

In response to Brad's argument, Karen distinguishes the facts in this case from those in *Cunningham* and directs our attention to cases involving stock options and employment benefits. Karen emphasizes that Texas courts have regularly held that stock options earned but not exercisable during the course of the marriage are community property, even if contingent upon future

15

employment. *See Boyd v. Boyd*, 67 S.W.3d 398, 410 (Tex. App.—Fort Worth 2002, no pet.) (recognizing that the ability to sell the options was limited); *Charriere v. Charriere*, 7 S.W.3d 217, 220 (Tex. App.—Dallas 1999, no pet.) (holding that the community nature was not affected by the fact that termination of the relationship with the employer would end the right to exercise the option); *Kline v. Kline*, 17 S.W.3d 445, 446 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (holding that the stock options were community property even if not vested). Furthermore, under established Texas law, unaccrued and unmatured retirement benefits, earned wholly or partially during marriage, are community property subject to division. *See Shanks*, 110 S.W.3d at 446; *Busby v. Busby,* 457 S.W.2d 551, 553 (Tex. 1970); *Boyd*, 67 S.W.3d at 407. Karen argues that the income stream at issue here is not a mere expectancy but involves significant rights[4] that existed and could be exercised during the course of the marriage, thereby creating a community interest analogous to stock options or employment benefits.

Interpreting the decree as Karen suggests, however, is contrary to Texas law. It is well settled that a person's earnings after divorce are separate

---

[4] These rights include: (1) the right to sell, (2) the right to give it to another, (3) the right to transfer by will, (3) the right to use as collateral, and (4) the right to income after qualified retirement.

property and therefore not subject to division. *See Von Hohn v. Von Hohn*, 260 S.W.3d 631, 641 (Tex. App.—Tyler 2008, no pet.); *Loazia*, 130 S.W.3d at 908; *Smith v. Smith*, 836 S.W.2d 688, 692 (Tex. App.—Houston [1st Dist.] 1992, no writ). Karen asks us to interpret the decree in a way that would grant her a percentage of Brad's future income. We cannot.

Although we agree with Karen's statement that the income stream earned during marriage is not a mere expectancy and, therefore, is community property subject to division, we disagree with her conclusion that the same can be said of the income stream's growth after divorce. *See Smith*, 836 S.W.2d at 692 (holding that a spouse is only entitled to a division of property that the community owns at the time of divorce). Whereas, the monthly income received from the downline in existence at the time of divorce is already earned, the income resulting from new members and brokers being added after divorce is not. *See Eliz v. Eliz*, No. 05-01-00085-CV, 2002 WL 1895090, at 3 (Tex. App.—Dallas Aug. 19, 2002, no pet.) (not designated for publication) (holding that evidence of husband's estimated income after divorce could not be used to determine value of community property).

To clarify, the members and brokers in the downline choose whether or not to pay their monthly dues, renewal is unnecessary. Once recruited, the income is earned and no further effort on Brad's part is necessary. The fact

17

that Brad is required to recruit one new member or broker each month in order to *receive* the income does not change the fact that the income has already been *earned*. Therefore, we hold that the trial court did not abuse its discretion in issuing an order clarifying that the decree awards Karen sixty percent of the income stream that results from members and brokers in the downline as of the date of divorce.

On the other hand, the addition of new members and brokers is contingent on Brad, or someone within his downline, successfully selling the product, whether that be a membership with Ameriplan or future employment as an independent broker of Ameriplan. Therefore, new members and brokers have yet to be earned. *See Loazia*, 130 S.W.3d at 906–07 (holding husband's post-divorce income was his separate property even though the contract contained a "guarantee clause" because husband's right to payment under contract did not accrue until he performed his services).

Because the addition of new members and brokers is not a guarantee, the growth in income resulting from new members and brokers is merely an expectancy. *See Von Hohn*, 260 S.W.3d at 642 (holding that because no money had been received by husband's law firm from pending but unsettled cases, revenue from those cases was no more than an expectancy interest, and any money to be received constituted future earnings to which wife was not

18

entitled). Furthermore, although Brad has significant rights as to the income stream earned during marriage, he does not and cannot have any rights in something he has yet to acquire. Therefore, any growth in income resulting from new members and brokers being added after the divorce is Brad's separate property.

In summary, the trial court's order awarding Karen a percentage of the income stream's future growth is contrary to the law. We hold, therefore, that the trial court abused its discretion in rendering the order and, accordingly, sustain Brad's second issue in part. We modify the order to delete the language awarding Karen "sixty percent of the commissions earned from the income and commissions that may be payable to, or received by, the brokers within the Group A category from any source whatsoever, from and after the date of August 4, 2003." In its place, we insert the language: "sixty percent of the commissions earned as a result of the income and commissions that may be payable to, or received by, the brokers within the Group A category from brokers within the Group A category. Karen is not entitled to any income generated by the Group A category that is the result of brokers and members added after August 4, 2003."

## VI.  Conclusion

Having overruled Brad's first issue and sustained his second issue in part, we affirm the trial court's clarification order as modified.


BOB MCCOY
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED: December 18, 2008