

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00249-CV

_____

MATTHEW SHANE WAGNER, Appellant

V.

LORETTA GALE DAVIS, Appellee

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 14-03101-367

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

## I. Introduction

In a single issue, Appellant Matthew Shane Wagner appeals the trial court's order granting the motion to clarify filed by his ex-wife, Appellee Loretta Gale Davis, regarding the parties' divorce decree. We reverse.

## II. Factual and Procedural Background

The parties married in 2010, bought a home together two years later, and made upgrades to the home. After they refinanced the home's mortgage in 2014, which resulted in an outstanding debt of $232,000, Davis filed for divorce pro se.

The parties' July 24, 2015 agreed final decree of divorce awarded to Davis as her "sole and separate property," from which Wagner was "divested of all right, title, interest, and claim in and to," among other things,

> [a]n undivided interest in the following real property [the parties' home], subject to the owelty lien granted to [Wagner] for fifty percent (50%) of the equity in such real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, warranties and service contracts, and title and closing documents.

Wagner was awarded as his sole and separate property, from which Davis was "divested of all right, title, interest, and claim in and to," among other things, "[f]ifty percent (50%) the proceeds from selling the residence . . ., for the value of [Wagner's] interest in the equity in such residence."

In the decree, Davis was ordered to pay, as part of the division of the parties' marital estate,

the following debts and obligations and indemnify and hold [Wagner] and his property harmless from any failure to timely pay such indebtedness:

. . . .

3. Any and all debts associated with and/or secured by any real . . . property awarded to [her] . . . , specifically including the loan associated with the house . . . awarded to [her] herein;

. . . .

6. Fifty percent (50%) of the equity in the parties['] homestead as of the date of the sale of the homestead.

The decree also included a section labeled "Owelty of Partition," in which the trial court noted that having awarded the parties' homestead to Davis, "it is necessary to impose an encumbrance for owelty of partition against the entirety of the property to secure the payment of the debt resulting from the award." The decree required Davis to sign a deed of trust to secure payment of the debt, stated that the encumbrance's purpose was "to secure the payment of the debt of [Davis] in favor of [Wagner] of fifty percent of the equity in the homestead, resulting from the award of the homestead in this divorce proceeding," and stated that the debt was "part of the division of community property between the parties" and not to be construed as any form of spousal support, alimony, or child support.

Three-and-a-half years after the divorce, Davis moved to clarify the divorce decree, complaining that the decree had "failed to clearly define and dispose of the parties' marital interest" in the house. She asked the trial court to clarify the parties'

3

obligations regarding the property. Both parties were represented by counsel at the May 2, 2019 hearing on Davis's motion.

At the hearing, Davis's counsel argued that the trial court had jurisdiction to clarify the decree, that there was an ambiguity in the decree, that Wagner's counsel had drafted decree, and that Wagner's community share should be valued as of the date of divorce since all of the home's mortgage debt thereafter had been paid with Davis's separate property funds.

Wagner's counsel responded that the trial court lacked jurisdiction to modify the decree because plenary power had expired and because the property was clearly addressed and divided in the decree. He argued that because Wagner had been awarded a right to 50% of the home's equity, his separate property share post-divorce had also been growing as the home's equity grew. And he informed the trial court that both parties had proceeded pro se in the divorce but that Wagner had come to his office at the end of the divorce to ask him to draw up the parties' agreement.

The trial court heard testimony from the parties about the home's value at the time of the divorce and admitted into evidence the decree, the special warranty deed with an encumbrance for owelty, the deed of trust that secured the owelty, and the home's 2015 tax appraisal. At the hearing's conclusion, the trial court summarized the parties' positions as Wagner's wanting half of the equity as of the date of the sale and Davis's wanting half of the equity as of the date of divorce payable at the time of sale.

The trial court granted Davis's motion, stating in its June 5, 2019 order,

4

The Court finds that certain terms of the prior order are not specific enough and should be clarified. The Court further finds that the Court has jurisdiction to make such clarification.

IT IS ORDERED that the Agreed Final Decree of Divorce entered by this Court on July 24, 2015, is clarified as follows:

The division of property set forth in that decree divided the parties' marital estate as of the date of that order, July 24, 2015, and as a result [of] the fifty percent (50%) of the equity in the real property . . . awarded to [Wagner] in that decree was and is fifty percent (50%) of the community value of the Property on the date of the prior order, July 24, 2015.

The Court further finds that the community value of the Property on July 24, 2015, was $22,579.00, making [Wagner's] fifty percent equity interest in that property on July 24, 2015, the amount of $11,298.50, which amount is due and payable by [Davis] to [Wagner] as of the date of the sale of the homestead.

## III. Discussion

In his single issue, Wagner argues that the decree's plain language "clearly awarded [him] fifty percent of the equity in the parties' Property as of the date of its sale," and that the trial court accordingly abused its discretion in its clarification order because the order substantively altered the decree's distribution. We agree.

We review a trial court's order on a motion for clarification of a divorce decree for an abuse of discretion,[1] but whether a divorce decree is ambiguous is a question of

---

[1]Generally, a trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). That is, it abuses its discretion if it fails to analyze the law correctly or misapplies the law to established facts, *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding) (per curiam); *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011), or if its decision is so arbitrary and unreasonable that it

law that we review de novo. *Murray v. Murray*, 276 S.W.3d 138, 143–45 (Tex. App.—Fort Worth 2008, pet. dism'd). Under the Family Code, a court that renders a divorce decree retains continuing subject matter jurisdiction to clarify and enforce the decree's property division, including clarification to correct an ambiguity so that the parties to the decree are able to comply with its terms. *Id.* at 144 (citing Tex. Fam. Code Ann. §§ 9.002, .006, .008; *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003)). The trial court may also render further orders to assist in the implementation of its prior order. *See* Tex. Fam. Code Ann. § 9.006(a) (stating that, subject to exceptions, the trial court may render further orders to enforce the decree's property division "to assist in the implementation of or to clarify the prior order"), § 9.008(b) ("On a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt, the court may render a clarifying order setting forth specific terms to enforce compliance with the original division of property.").

However, the trial court may not "amend, modify, alter, or change the division of property made or approved in the decree," and any order that does so, changing the actual, substantive division of property, "is beyond the power of the divorce court and is unenforceable." *Id.* § 9.007(a)–(b); *Murray*, 276 S.W.3d at 144 (citing *Shanks*, 110 S.W.3d at 449, for the proposition that a clarification order cannot be used to

amounts to a clear and prejudicial error of law. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding).

6

make a substantive change in the divorce decree after it becomes final even if the decree contains a substantive legal error).

Agreed judgments like the one before us are interpreted in accordance with contract law; we construe divorce decrees as a whole to harmonize and give effect to the entire decree. *See Murray*, 276 S.W.3d at 144 (referencing *Shanks*, 110 S.W.3d at 447); *see also Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009).[2] If, after reading the decree as a whole, the terms are unambiguous, we must effectuate the order in light of the actual language used. *Murray*, 276 S.W.3d at 144; *see Reiss v. Reiss*, 118 S.W.3d 439, 441–42 (Tex. 2003) ("[W]hen the language of the decree is unambiguous, as it is here, we interpret the judgment literally.");[3] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)

---

[2]In *Hagen*, the court construed a decree that awarded to the ex-wife "One-half of 18/20ths of all Army Retirement Pay or Military Retirement Pay, if, as and when received" by the ex-husband. 282 S.W.3d at 900–02. After the ex-husband retired, he opted to be paid VA disability benefit payments in lieu of part of his military retirement payments, which reduced his amount of military retirement pay. *Id.* at 900. The court held that the literal language employed in the decree was unambiguous, did not specify division of gross military pay, and did not specify a division of VA disability benefits. *Id.* at 906. It concluded that the trial court did not err by clarifying that the unambiguous decree did not divide VA disability pay and affirmed the trial court's judgment. *Id.* at 900, 907.

[3]In *Reiss*, the court construed a decree that specifically recited that the ex-wife would receive "fifty percent (50%) of such retirement or pension benefit to which [ex-husband] is entitled to receive," unequivocally awarding to her half of his total retirement benefits under the retirement plan regardless of whether they accrued during or after marriage. 118 S.W.3d at 442. While the trial court mistakenly classified all of the benefits under the plan as community property, and the effect of the decree was to divest the ex-husband of some of his separate property, because the decree's language was not ambiguous and because the ex-husband had not appealed the decree, the supreme court affirmed the trial court's judgment. *Id.* at 441–43; *see*

7

(stating that if a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous and the court will construe it as a matter of law). Only when a contract is first determined to be ambiguous may we consider the parties' interpretations and admit extraneous evidence to determine the instrument's true meaning. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (op. on reh'g).

Wagner argues that the fact that the property's value may have increased since the divorce does not affect the decree's plain language, which, he argues, "specifically and unambiguously calls for [his] equity in the Property to be valued and paid as of the date of the sale of the homestead." He contends that the trial court's order impermissibly alters the decree's property distribution by ordering that his equity in the property is determined on the date of the decree. He further contends that the remedy for any perceived substantive error was a direct appeal, which neither party pursued.

Both parties refer us to *Shanks*. In *Shanks*, the supreme court considered a divorce decree that neither party had appealed and that awarded to the ex-wife twenty-five percent of the ex-husband's retirement benefits and provided that her interest "shall be payable to [her] if, as and when paid by American Airlines . . . as pension or retirement employee benefits existing because of [ex-husband's]

*also Pearson v. Fillingim*, 332 S.W.3d 361, 364 (Tex. 2011) ("A final, unambiguous divorce decree that disposes of all marital property bars relitigation.").

8

employment." 110 S.W.3d at 444–45. The court held that because the decree was unambiguous—the trial court had awarded to the ex-wife "an interest of all sums received under such *plan*, not an interest of presently accrued benefits under such plan . . . [t]he fact that the plan's value may have increased since the divorce does not affect the decree's plain language, which simply cannot reasonably be construed to award [to her] an interest only in the plan benefits that had accrued on the date of divorce." *Id.* at 447–48.

Here, page 3 of the decree expressly provided for Davis to receive an undivided interest in the home, subject to a lien for fifty percent of the home's equity, but the decree is silent at this point on when and how that equity will be calculated. Page 4 of the decree expressly provides for Wagner to receive fifty percent of the proceeds from the home's sale, representing his equity in the house and further explains when (upon sale) and how (proceeds) the equity in the home is to be valued. Page 5 of the decree provides that Davis is indebted to Wagner for fifty percent of the equity in the house "as of the date of the sale of the homestead." This provision confirms the when and how set out above—at the time of sale. Finally, on page 6 of the decree, the owelty-of-partition provision sets out that the lien's purpose is to secure Davis's payment to Wagner of the debt of the fifty percent equity referenced in the decree.

Whether good or bad, wise or foolhardy, the parties' agreement sets out express terms that reflect that Davis bargained away some of her separate property interest from appreciation payments post-divorce and that Wagner assumed the risk

9

that at the time of the home's ultimate sale, it could have great value or no value at all. Because their agreement's express terms addressed the who, what, when, and how of the partition, the trial court erred by finding ambiguity and rewriting the contract. Accordingly, we sustain Wagner's sole issue.

## IV. Conclusion

Having sustained Wagner's sole issue, we reverse and vacate the trial court's order.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: January 16, 2020