

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00071-CV

———————————————

RONDERRICK JOHNSON, Appellant

V.

TALAUN BATHSHEBA HASSEAN SIMMONS, Appellee

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-654949-19

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Opinion by Justice Gabriel

## OPINION

Appellant Ronderrick Johnson appeals a default family violence protective order issued in favor of Appellee Talaun Bathsheba Hassean Simmons, a former member of Johnson's household. *See* Tex. Fam. Code Ann. § 85.006. In his sole point, Johnson argues that the trial court erred by granting the default family violence protective order because the proof of service of the application for protective order had not been on file for ten days prior to the entry of the protective order as allegedly required by Texas Rule of Civil Procedure 107(h). *See* Tex. R. Civ. P. 107(h). We will affirm.

## I. BACKGROUND

On January 23, 2019, Simmons applied for a family violence protective order against Johnson. In her affidavit in support of the application, Simmons stated that she had lived with Johnson from September 2017 until December 26, 2018. She described an incident occurring on or about December 26, 2018, in which she refused Johnson's sexual advances, and he then grabbed her by the throat, told her that she belonged to him, threatened her, and attempted to rape her. Simmons averred that Johnson repeatedly attempted to contact her following the incident—she estimated that he called her 100 times in early January 2019.

On January 24, 2019, the trial court granted a temporary ex parte protective order in favor of Simmons, and the trial court set a hearing for January 30, 2019, for Johnson to show cause why the temporary ex parte protective order should not be

2

made into a final protective order. Johnson, who was incarcerated in the Tarrant County jail, was served with the application on January 24, 2019, and he was given notice of the January 30, 2019 hearing. The return of service was filed by the district clerk on January 25, 2019—five days before the hearing.

On January 30, 2019, the trial court heard Simmons's application for protective order. Johnson did not attend the hearing. Simmons testified regarding the December 26, 2018 incident and regarding Johnson's repeated attempts to contact her in early January 2019. At the conclusion of the hearing, the trial court signed a default family violence protective order in Simmons's favor. This appeal ensued.

## II. DOES RULE 107(h) APPLY TO FAMILY VIOLENCE PROTECTIVE ORDERS?

### A. STANDARD OF REVIEW

In his sole point, Johnson argues that the trial court erred by granting the default family violence protective order because the proof of service of the application for protective order had not been on file for ten days prior to the entry of the protective order as allegedly required by Rule 107(h). Johnson's point requires us to address the legal question of whether Rule 107(h) applies to family violence protective orders. We review legal questions de novo. *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 536 (Tex. 2019); *Murray v. Murray*, 276 S.W.3d 138, 143 (Tex. App.—Fort Worth 2008, pet. dism'd). Answering that legal question requires us to determine whether the Legislature intended for Rule 107(h) to apply to family violence

3

protective orders when the Legislature enacted Title 4 of the Family Code—the statutes authorizing family violence protective orders. *See* Tex. Fam. Code Ann. §§ 71.001–93.004. We review questions of statutory construction de novo. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014); *Tex. Mut. Ins. Co. v. Baker*, 292 S.W.3d 798, 802 (Tex. App.—Fort Worth 2009, no pet.). Both of those questions—whether Rule 107(h) applies to family violence protective orders and whether the Legislature intended for Rule 107(h) to apply to family violence protective orders—are issues of first impression for our court.

## B. RULES OF STATUTORY CONSTRUCTION

Our primary objective in statutory construction is to give effect to the Legislature's intent. *City of Dallas v. TCI West End, Inc.*, 463 S.W.3d 53, 55 (Tex. 2015); *Boenig v. StarnAir, Inc.*, 283 S.W.3d 444, 446 (Tex. App.—Fort Worth 2009, no pet.). To achieve this, "we look first and foremost to the words of the statute." *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006); *see Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) ("[T]he words [the Legislature] chooses should be the surest guide to legislative intent."). We construe the statute's words according to their plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results. *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008).

4

We consider statutes as a whole rather than viewing individual provisions in isolation. *City of Dallas*, 463 S.W.3d at 55; *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). We presume that the Legislature chose a statute's language with care, including each word chosen for a purpose. *TGS-NOPEC Geophysical*, 340 S.W.3d at 439; *Boenig*, 283 S.W.3d at 447. Likewise, "every word excluded from a statute must also be presumed to have been excluded for a purpose." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981); *Boenig*, 283 S.W.3d at 447. When construing a statute, "[w]e must avoid adopting an interpretation that 'renders any part of the statute meaningless.'" *City of Dallas*, 463 S.W.3d at 55 (quoting *Crosstex Energy*, 430 S.W.3d at 390). We also consider the objective the law seeks to obtain and the consequences of a particular construction. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004) (citing Tex. Gov't Code Ann. § 311.023(1), (5)); *Boenig*, 283 S.W.3d at 447 (citing same). Statutes are presumed to have been enacted by the Legislature with complete knowledge of existing law and with reference to it. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990); *Williams v. Williams*, 19 S.W.3d 544, 547 (Tex. App.—Fort Worth 2000, pet. denied).

## C. RULE 107(H) AND TITLE 4 OF THE FAMILY CODE

In its present form, Rule 107(h) provides that "[n]o default judgment shall be granted in any cause until proof of service . . . shall have been on file with the clerk of the court ten days, exclusive of the day of filing and the day of judgment." Tex. R. Civ. P. 107(h). Prior versions of Rule 107, dating as far back as 1941, included similar

language requiring that proof of service be on file with the clerk of the court for at least ten days prior to the entry of a default judgment. *See, e.g.*, *Civil Procedure Rules Amended, Official Order*, 40 Tex. B.J. 709, 711 (1977) (providing pertinent language in the version of Rule 107 that became effective January 1, 1978: "No default judgment shall be granted in any cause until the citation with proof of service . . . shall have been on file with the clerk of the court ten days, exclusive of the day of filing and the day of judgment."); *Rules of Civil Procedure*, 3 Tex. B.J. 519, 541 (1940) (providing pertinent language in the version of Rule 107 that became effective September 1, 1941: "No default judgment shall be granted in any cause until the citation, with the officer's return thereon, shall have been on file with the clerk of the court ten days, exclusive of the day of filing and the day of judgment.").

Title 4 of the Family Code, titled "Protective Orders and Family Violence," was originally enacted in 1979. *See* Act of April 19, 1979, 66th Leg., R.S., ch. 98, § 11, 1979 Tex. Gen. Laws 182, 185, *repealed and reenacted by* Act of April 21, 1997, 75th Leg., R.S., ch. 34, §§ 1, 2, 1997 Tex. Gen. Laws 76, 76, 88 (current version at Tex. Fam. Code Ann. §§ 71.001–93.004). Title 4 establishes the procedure for the issuance and enforcement of family violence protective orders, which includes protective orders sought by a member or former member of a household against another member of the household. *See* Tex. Fam. Code Ann. §§ 71.004, 71.006, 81.001. The Legislature stated that its purpose in enacting Title 4 was to:

6

provide protection and temporary shelter . . . for victims of family violence and members of their family . . . [and] to reduce the high incidence of deaths and injuries sustained by law enforcement officers in handling family disturbances and to aid law enforcement officers in protecting victims of family violence from serious or fatal injuries.

Act of April 19, 1979, 66th Leg., R.S., ch. 98, § 1, 1979 Tex. Gen. Laws 182, 182 (repealed and reenacted 1997); *see Roper v. Jolliffe*, 493 S.W.3d 624, 634 (Tex. App.—Dallas 2015, pet. denied) ("The purpose of [Title 4] is to provide an expedited procedure for victims of domestic violence; the purpose is not to correct past wrongs or establish liability but to give immediate protection to the applicant.").

Because of the nature of the relief anticipated and the danger that it seeks to avoid, Title 4 utilizes a "very abbreviated procedure." *Martinez v. Martinez*, 52 S.W.3d 429, 432 (Tex. App.—Fort Worth 2001, pet. denied) (op. on reh'g). As part of that "very abbreviated procedure," the trial court is required to hold a hearing on an application for a family violence protective order within fourteen days of the filing of the application. Tex. Fam. Code Ann. § 84.001(a). This "short deadline recognizes the need for prompt resolution of the applicant's request." *St. Germain v. St. Germain*, No. 14-14-00341-CV, 2015 WL 4930588, at *5 (Tex. App.—Houston [14th Dist.] Aug. 18, 2015, no pet.) (mem. op.) (citing *Barbee v. Barbee*, No. 12-09-00151-CV, 2010 WL 4132766, at *6 (Tex. App.—Tyler Oct. 20, 2010, no pet.) (mem. op.)). The application for a family violence protective order must be served on the respondent in the same manner as citation under the Texas Rules of Civil Procedure, except that service by publication is not authorized. Tex. Fam. Code Ann. § 82.043(c). If the

7

respondent is served with notice of the application within the forty-eight hours before the hearing, the trial court, on request by the respondent, shall reschedule the hearing for a date not later than fourteen days after the date set for the hearing. *Id.* § 84.004(a). A court may render a default family violence protective order when the respondent does not attend the hearing if the respondent was served with (1) a copy of the application for protective order and (2) a notice of the hearing on the application for protective order. *Id.* § 85.006(a).

### D. ANALYSIS

We begin our analysis by once again noting the purpose of Title 4—to provide an expedited procedure to protect victims of family violence and to reduce the number of deaths and injuries to those victims and to the law enforcement officers charged with handling family disturbances. *See* Act of April 19, 1979, 66th Leg., R.S., ch. 98, § 1, 1979 Tex. Gen. Laws 182, 182 (repealed and reenacted 1997); *Roper*, 493 at 634. The Legislature chose a very abbreviated timeline for a trial court to hear an application for a family violence protective order, requiring the trial court to hold a hearing "not . . . later than the 14th day after the date the application is filed." Tex. Fam. Code Ann. § 84.001(a). By choosing the language "not . . . later than the 14th day after the date the application is filed," the Legislature necessarily contemplated that a hearing could be held less than fourteen days after the application is filed. *See TGS-NOPEC Geophysical*, 340 S.W.3d at 439 (stating that the Legislature chooses a statute's language with care); *Boenig*, 283 S.W.3d at 447 (same). Indeed, Section

8

84.004(a)—which requires the trial court to reschedule a hearing upon a respondent's request when the respondent has been served with an application within the forty-eight hours before the hearing—contemplates that the trial court may hear an application for a family violence protective order forty-nine hours after the application is filed. *See* Tex. Fam. Code Ann. § 84.004(a). Rule 107(h), however, requires that proof of service be on file with the clerk for ten days, exclusive of the day of filing and the day of judgment, prior to the entry of a default judgment. Tex. R. Civ. P. 107(h). If we adopt Johnson's construction, a hearing on an application for a family violence protective order—at least one that could result in the entry of a default protective order—necessarily could not be held at any point prior to the eleventh day after the date the proof of service was filed. And a hearing could only be held on the eleventh day in a perfect world where an application is filed, notice of the application is served on the respondent, proof of service is returned to the clerk, and proof of service is filed by the clerk all in the same day. We do not live in a perfect world. Simmons's brief ably points out the real-world challenges presented by Johnson's construction:

> One such situation involves holidays. For an application filed on the eve of a holiday, the notice may not issue for multiple business days (almost certainly the case at Thanksgiving or Christmas). The process server may not even receive the notice until day four, which would mean the notice would have to be served, returned and filed all in the same day. . . . [Another scenario is if] the officer serves the respondent toward the end of the day on a Friday, and the clerk's office is closed. Return is made on Monday, too late unless Friday was the day the application was

9

filed. Another is that the return is made timely, but the clerk does not file it the same day.

. . . .

Also, if there are any difficulties in serving the respondent, a default order would be unavailable. If the respondent were in another county, it might take a few days just to get the notice to the appropriate process server. The respondent might be hard to locate or evade service. And, the serving officer likely has more than one document to serve, so he might not be able to make several attempts at service in one day. In any of these scenarios, it is unlikely that a return on service would be timely.

In yet another example, service may be accomplished by certified mail, return receipt requested. . . . If Rule 107(h) applies, the notice would have to be mailed, signed for by the respondent, returned to the process server, and the return filed within three days. Only in a best-case scenario is a piece of certified mail delivered the next day, and the return receipt delivered the day after. A default order would almost never be available if the notice is served by certified mail, even though Title 4 authorizes service in that manner.

Given these real-world challenges, it would be difficult—if not practically impossible in most instances—for the proof of service to be on file within three days of the application for a family violence protective order such that a hearing could be held within fourteen days of the application. Adopting Johnson's construction would, for all intents and purposes, render the Legislature's inclusion of the phrase "not . . . later than the 14th day after the date the application is filed" meaningless. *See City of Dallas*, 463 S.W.3d at 55; *Crosstex Energy*, 430 S.W.3d at 390. Section 84.004(a) would likewise be rendered meaningless by adopting Johnson's construction. If a default judgment cannot be granted prior to the eleventh day after an application for a family violence protective order is filed, there is no reason for the Legislature to have

10

stated that a trial court must reschedule a hearing upon a respondent's request when the respondent has been served with an application within the forty-eight hours before the time set for the hearing. *See* Tex. Fam. Code Ann. § 84.004(a).

We also are mindful of the words the Legislature excluded from Title 4. *See Cameron*, 618 S.W.2d at 540 (stating that words excluded from a statute must be presumed to have been excluded for a purpose); *Boenig*, 283 S.W.3d at 447 (same). While Section 82.043(c) states that "[n]otice of an application for a protective order must be *served* in the same manner as citation under the Texas Rules of Civil Procedure," it does not state that the *return of service* must be accomplished in the same manner as the Texas Rules of Civil Procedure. Tex. Fam. Code. Ann. § 82.043(c) (emphasis added). If the Legislature had intended for the return of service to be accomplished in the same manner as the Texas Rules of Civil Procedure, it could have stated so, as the Legislature has made a distinction between service and return of service in other statutes. *See, e.g.*, Tex. Transp. Code Ann. § 286.066(b) ("Notice under this section . . . shall be served and returned in the same manner and for the same length of time as provided for the service of citation in a civil action in justice court."); Tex. Code Crim. Proc. Ann. art. 22.05 ("[A] surety is entitled to notice by service of citation, the length of time and in the manner required in civil actions; and the officer executing the citation shall return the same as in civil actions."); Tex. Est. Code Ann. § 112.102(5) ("An applicant for an order . . . must prove to the court's satisfaction that . . . citation has been served and returned in the manner and for the

11

length of time required by this title."). We presume that the Legislature chose its words carefully and that it intended to require service but not the return of service to be accomplished in the same manner as the Texas Rules of Civil Procedure. *See TGS-NOPEC Geophysical*, 340 S.W.3d at 439; *Cameron*, 618 S.W.2d at 540; *Boenig*, 283 S.W.3d at 447.

The parties have pointed us to only one case addressing the interplay between Rule 107(h) and family violence protective orders, *Lancaster v. Lancaster*, No. 01-14-00845-CV, 2015 WL 9480098 (Tex. App.—Houston [1st Dist.] Dec. 29, 2015, no pet.) (mem. op.), and we have found no other.[1] In *Lancaster*, a wife applied for a

---

[1]We have found several cases affirming family violence protective orders in circumstances where the application was served less than eleven days prior to the entry of the protective order; none of these cases, however, are default cases and none address Rule 107(h). *See, e.g., Caballero v. Caballero*, No. 14-16-00513-CV, 2017 WL 6374724, at *5–6 (Tex. App.—Houston [14th Dist.] Dec. 14, 2017, no pet.) (mem. op.) (affirming family violence protective order in case involving respondent who was served with the application for protective order forty-eight hours prior to hearing and who did not request a continuance); *St. Germain*, 2015 WL 4930588, at *5, *5 n.4 (affirming family violence protective order in case involving respondent who was served with the application for protective order eight days before the order was granted); *Taherzadeh v. Ghaleh-Assadi*, 108 S.W.3d 927, 929 (Tex. App.—Dallas 2003, pet. denied) (affirming family violence protective order in case involving respondent who was served with the application for protective order nine days before the order was granted). We have also found cases recognizing that other rules—discovery rules and the right to a jury trial—conflict with Title 4 and the issuance of family violence protective orders. *See Roper*, 493 S.W.3d at 630 (holding Title 4 "makes clear that the legislature intended that courts, not juries, act as the sole fact finders and have the responsibility for making the findings necessary for the issuance of a family violence protective order"); *Martinez*, 52 S.W.3d at 432 (recognizing the "inherent conflict between normal discovery contemplated by the rules of civil procedure and the mandatory fourteen-day (from the filing date) hearing date of the family code protective order provisions"); *Williams*, 19 S.W.3d at 548 (holding Legislature did not

family violence protective order against her husband. *Id.* at *1. The husband was served with the application and hearing notice five days before the hearing. *Id.* The husband did not attend the hearing, and the trial court signed a default family violence protective order against him. *Id.* Three years later, the husband filed a petition for bill of review that was denied by the trial court. *Id.* at *1–2. On appeal, the husband argued, among other things, that the trial court erred by denying his bill of review because at the time the trial court signed the default family violence protective order against him, the return of service of the wife's application had not been on file with the clerk's office for "the requisite ten days." *Id.* at *3 (citing Tex. R. Civ. P. 107(h)). The First District Court of Appeals agreed, holding that the default family violence protective order was void. *Id.* at *4.

While we may be guided by our sister courts, "we are not bound by the precedent[s] [they set] in determining cases of first impression for us." *In re Reardon*, 514 S.W.3d 919, 923 (Tex. App.—Fort Worth 2017, orig. proceeding); *see Mitchell v. John Wiesner, Inc.*, 923 S.W.2d 262, 264 (Tex. App.—Beaumont 1996, no writ) ("The opinions of a sister court of appeals are not precedent that bind other courts of appeals."). We decline to follow our sister court's decision in *Lancaster*. Our sister court's opinion did not address what we have addressed here—whether the

---

intend for jury to decide cases involving family violence protective orders because "[i]t is not possible to comply with the statutory requirement to hold a hearing within fourteen days, yet also comply with the rule that requires filing of a written request for a jury trial thirty days in advance").

13

Legislature intended for Rule 107(h) to apply to family violence protective orders. Applying the rules of statutory construction set forth above, we hold that in passing Title 4, the Legislature did not intend for Rule 107(h) to apply to family violence protective orders. In our view, applying Rule 107(h) to family violence protective orders would render Section 84.001(a)'s requirement that a hearing be held "not . . . later than the 14th day after the date the application is filed" meaningless, would render Section 84.004(a)'s requirement that a trial court reschedule hearings upon a respondent's request when the respondent has been served with an application within the forty-eight hours before the time set for the hearing meaningless, would ask us to insert the words "return of service" into Section 82.043(c), and would generally thwart the purpose of Title 4 by causing delay in what is meant to be an expedited process. *See* Tex. Fam. Code Ann. §§ 82.043(c), 84.001(a), 84.004(a); *Roper*, 493 S.W.3d at 634. We thus hold that Rule 107(h) does not apply to family violence protective orders.

Having determined that Rule 107(h) does not apply to family violence protective orders, we turn to the provision of Title 4 authorizing default family violence protective orders. *See* Tex. Fam. Code § 85.006(a). That provision simply requires a respondent to be served with a copy of the application for protective order and notice of the hearing on the application for protective order. *See id.* Here, Johnson was served with both the application and notice of the hearing five days before the hearing. Accordingly, we overrule Johnson's sole point.

14

## III.  CONCLUSION

Having overruled Johnson's sole point, we affirm the trial court's default family violence protective order.

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered:  February 20, 2020