

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00332-CV

———————————————

MATTHEW KNORR, Appellant

V.

MARILYNN MARIE KNORR, Appellee

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-448419-08

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Almost a decade after their divorce, a former husband and wife, Marilynn Marie Knorr and Matthew Knorr, began this dispute over their entitlement to one another's military retirement benefits. Marilynn prevailed in the trial court; she won an order clarifying that under the agreed divorce decree, she was entitled to half of Matthew's retirement benefits. Matthew lost his reciprocal bid for a share of Marilynn's benefits.

Matthew appeals. He argues that Marilynn should not be entitled to his benefits because he agreed to the divorce decree under duress. Matthew also asserts that he was entitled to a share of Marilynn's benefits because the original divorce decree failed to properly divide that asset. We affirm.

## I.    BACKGROUND

In 2008, Marilynn petitioned for divorce from Matthew. At the time, both were members of the armed services. Later that year, the parties stipulated to a final decree of divorce. The decree divided Matthew's retirement benefits fifty-fifty between the parties. The decree also awarded Marilynn 100% of her own "retirement plan" or "other benefits existing by reason of the wife's past, present, and future employment."

In 2017, Marilynn petitioned to clarify the division of Matthew's military retirement benefits.[1] Matthew filed an answer alleging that he should not have to share his retirement benefits because he agreed to the property division and judgment under

---

[1]Marilynn explained that she had received a letter from the military requesting such a clarifying order.

duress. Matthew explained that during the divorce proceedings, Marilynn had threatened to tell his superiors that he was having an affair if he did not sign her proposed division. According to Matthew, he only agreed to her proposal—and the fifty-fifty split of his benefits—because he feared that if Marilynn reported the affair, it could lead to a court martial or at least affect his chances for promotion.

Matthew also counter-petitioned, alleging that the divorce decree had failed to address the division of Marilynn's military retirement benefits. Matthew asked the trial court to award him half of her benefits, which he maintained was an undivided asset.

After hearing the evidence, the trial court granted Marilynn an order clarifying her entitlement to Matthew's military retirement benefits. But the trial court found that, contrary to Matthew's allegations, the divorce decree had already properly disposed of all the parties' assets, including Marilynn's retirement benefits. So, the trial court denied Matthew's request to divide Marilynn's benefits. Matthew appealed.

## II.  MATTHEW'S BENEFITS

In his first issue, Matthew challenges the agreed divorce decree's division of his retirement benefits. According to Matthew, he would not have consented to the decree if he had not been under duress. Marilynn argues that Matthew's belated claim of duress is an impermissible collateral attack on the divorce decree. We agree with Marilynn.

"As with other final, unappealed judgments which are regular on their face, divorce decrees and judgments are not vulnerable to collateral attack." *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009). "The decree must be void, not voidable, for a

collateral attack to be permitted." *Id.* A judgment is void—and may be collaterally attacked at any time—when "the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010). All other errors make the judgment merely voidable and must be corrected through a direct attack. *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003); *Carlson v. Schellhammer*, No. 02-15-00348-CV, 2016 WL 6648754, at *2 (Tex. App.—Fort Worth Nov. 10, 2016, no pet.) (mem. op.). "A direct attack—such as an appeal, a motion for new trial, or a bill of review—attempts to correct, amend, modify or vacate a judgment and must be brought within a definite time period after the judgment's rendition." *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012).

"A collateral attack, which attempts to bypass the appellate process in challenging the integrity of a judgment, runs counter to the policy of finality." *Orca Assets, G.P., L.L.C. v. Dorfman*, 470 S.W.3d 153, 159 (Tex. App.—Fort Worth 2015, pets. denied). "Thus, when attacked collaterally, a judgment is 'presumed valid.'" *Id.* (quoting *PNS Stores*, 379 S.W.3d at 273). "A court's review in a collateral attack is limited to whether the record affirmatively and conclusively negates the existence of jurisdiction, not whether the trial court otherwise erred in reaching its judgment." *Id.* (internal quotation omitted).

Matthew did not directly attack the divorce decree. And in this proceeding, Matthew does not challenge the trial court's jurisdiction vis-à-vis the divorce decree.

4

Rather, Matthew claims that the agreed divorce decree should be invalidated because he signed it under duress.

However, our supreme court and this court have squarely rejected delayed attempts to avoid agreed judgments based on contractual defenses such as duress, reasoning that they are impermissible collateral attacks:

> Despite the fact that a judgment has its genesis in an agreement between the parties, the judgment itself has an independent status. Once the agreement of the parties has been approved by the court and made a part of its judgment, the agreement is no longer merely a contract between private individuals but is the judgment of the court.
>
> As this court stated in *Wagner v. Warnasch*, "The fact that a judgment is rendered by consent gives it neither less nor greater force or effect than it would have had it been rendered after protracted litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties." Thus, in suits to enforce agreed judgments, parties may not raise contractual defenses because such defenses constitute impermissible collateral attacks on the prior judgments.

*Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex. 1979) (internal citations omitted); *Spradley v. Hutchison*, 787 S.W.2d 214, 219 (Tex. App.—Fort Worth 1990, writ denied).

Matthew's argument concerning the contractual defense of duress is an attempt to collaterally attack the divorce decree. We see nothing in the record that would carry Matthew's burden on collateral attack to affirmatively and conclusively negate the existence of jurisdiction. Therefore, we overrule Matthew's first issue.

5

### III. Marilynn's Benefits

In his second issue, Matthew contends that the trial court abused its discretion in failing to divide Marilynn's military retirement benefits. Marilynn argues that the divorce decree unambiguously awarded her all of her retirement benefits. Again, we agree with Marilynn.

The Uniformed Services Former Spouses' Protection Act allows a court to divide military retirement benefits as part of a divorce proceeding. *See* 10 U.S.C.A. § 1408(c)–(d); *Jackson v. Jackson*, 319 S.W.3d 76, 78–79 (Tex. App.—San Antonio 2010, no pet.). An employee spouse's accrued benefits in a defined benefit retirement plan that have been earned during marriage, but which have not vested and matured at the time of divorce, are a contingent property interest and a community asset subject to division upon divorce. *Boyd v. Boyd*, 67 S.W.3d 398, 407 (Tex. App.—Fort Worth 2002, no pet.).

If a Texas court of competent jurisdiction failed to dispose of property that is subject to division in a final decree of divorce, the court shall divide the property in a just and right manner. Tex. Fam. Code Ann. § 9.203(a); *Woody v. Woody*, 429 S.W.3d 792, 799 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (op. on reh'g). We review a ruling on a post-divorce petition to divide property for an abuse of discretion. *In re Marriage of Ford*, 435 S.W.3d 347, 350 (Tex. App.—Texarkana 2014, no pet.). "The burden is on the party seeking the division to establish that community property existed when the marriage was being dissolved and that the property was not divided by the

court when rendering the final divorce decree." *Land v. Land*, 561 S.W.3d 624, 634 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

However, while a trial court must divide the undivided, the trial court "may not amend, modify, alter, or change the division of property made or approved in the decree of divorce." Tex. Fam. Code Ann. § 9.007(a); *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). The trial court may not alter the allocation of that which has already been divided "even if the decree incorrectly characterizes or divides the property." *Pearson*, 332 S.W.3d at 363. The express award of retirement benefits in a divorce decree operates as a bar to any subsequent suit to revise that division. *Koepke v. Koepke*, 732 S.W.2d 299, 300 (Tex. 1987).

Determining whether the divorce decree divides certain property is largely a question of interpretation. *See Land*, 561 S.W.3d at 635. "Agreed judgments are interpreted in accordance with contract law." *Murray v. Murray*, 276 S.W.3d 138, 144 (Tex. App.—Fort Worth 2008, pet. dism'd). "We construe divorce decrees, like judgments, as a whole to harmonize and give effect to the entire decree." *Id.* "If, when read as a whole, the divorce decree's terms are unambiguous, we must effectuate the order in light of the actual language used." *Id.* "Whether a divorce decree is ambiguous is a question of law subject to de novo review." *Id.* at 144–45.

In the case at hand, the divorce decree awarded Marilynn all of her retirement benefits, stating that she alone was awarded

[a]ll sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, *retirement plan*, Keogh plan, *pension plan, . . . or other benefits existing by reason of the wife's past, present, and future employment.*

[Emphasis added.] Texas courts have held that language such as this unambiguously awards to the recipient any military retirement benefits. *See Carlson v. Carlson*, 983 S.W.2d 304, 306 (Tex. App.—Houston [1st Dist.] 1998, no pet.); *Wright v. Wright*, 710 S.W.2d 162, 163–65 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.); *see also Macias v. Macias*, No. 13-09-00351-CV, 2010 WL 2697139, at *1 n.2 (Tex. App.—Corpus Christi–Edinburg July 8, 2010, pet. denied) (mem. op.).

Thus, the divorce decree awarded Marilynn's military retirement benefits wholly to her and not Matthew. Because this language disposes of the benefits in question, the trial court was right to refuse Matthew's request to divide the benefits anew, which would have effectively amended the existing division. *See* Tex. Fam. Code Ann. § 9.007(a); *Pearson*, 332 S.W.3d at 363. We overrule Matthew's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: September 23, 2021

8