**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed April 17, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00762-CV

---

### TONY WOODY, Appellant

### V.

### MADELYN WOODY, Appellee

---

**On Appeal from the 328th District Court
Fort Bend County, Texas
Trial Court Cause No. 07-DCV-157762**

---

### O P I N I O N

Appellant Tony Woody and appellee Madelyn Woody each filed post-divorce pleadings seeking enforcement and modification of their final decree of divorce. After a series of trial proceedings on the issues presented in these motions, the trial court entered judgment ordering Tony to pay $771.73 per month in child support and to reimburse Madelyn $3,383.00 in medical expenses, and denying Tony's motion for enforcement. The court further awarded certain

property items to the person in possession of them as of a certain date.

In his first three issues on appeal, Tony contends that the trial court abused its discretion in (1) approving in the judgment the parties' agreement on child support after Tony had revoked his consent, (2) accepting Madelyn's evidence regarding unreimbursed medical expenses when it was "riddled with errors," and (3) denying Tony's motion to enforce the division of property despite "strong evidence supporting his property claim." In his fourth issue, Tony contends the trial court lacked jurisdiction to modify the division of property. Among other arguments in response, Madelyn asserts that Tony's appeal is frivolous. We affirm the trial court's judgment in part and reverse and remand in part. We further hold that Tony's appeal was not frivolous.

### *Background*

The trial court entered a final decree of divorce dissolving Tony and Madelyn's marriage on October 10, 2008. In the decree, among other things, the court ordered Tony to pay child support for their two children, initially at $964.66 per month, and after one child obtained certain milestones, such as graduating from high school and turning eighteen years of age, at $771.73 per month. The decree also contains fairly complex provisions regarding payment for insurance and medical expenses. The parties agree, however, that Tony was required to reimburse Madelyn for half of the medical expenses she incurred on behalf of the children that were not covered by insurance. Additionally, the court divided the parties' marital estate. As particularly relevant to our analysis, the court awarded Tony the guns and auto mechanic equipment then in Madelyn's possession.

Beginning in November 2010, the parties filed a series of post-decree motions and petitions. As will be discussed in more detail below, among the issues raised in these pleadings were the amount of child support Tony should pay,

2

additional reimbursement from Tony for the children's uninsured medical expenses, and whether Tony had received all of the property to which he was entitled, including, in particular, the guns and auto mechanic equipment.

During the pendency of these matters, one of the children attained the age of majority and was no longer covered by the child support provisions of the decree, so that Tony's child support obligation under the decree was lowered to $771.73 per month. In the post-decree filings, Madelyn sought an increase in this amount and Tony sought a decrease. The parties proceeded to mediation on this issue, but no written, signed settlement agreement resulted. At a hearing, however, the mediator appeared and reported to the court that a settlement had indeed been reached to leave the child support obligation where it was under the original decree: $771.73. Tony, appearing pro se, subsequently appeared at the hearing and stated that whatever was in the prior decree was "fine." The court then stated that they could set the issue aside and continue with other matters. At a later hearing, Tony requested the child support obligation be reduced, primarily because the Internal Revenue Service had garnished his wages.[1] In other hearings, the parties presented conflicting testimony regarding the amount of medical expenses Tony owed and whether he had received all of the property he was awarded that was in Madelyn's possession at the time of the divorce.

In its Final Order and Judgment, the trial court determined that one of the children was no longer covered by the child support provisions and expressly approved the parties' reported agreement that Tony pay $771.73 each month in child support for the remaining child. The judgment stated that "the parties agreed during mediation . . . and announced on the record in open court, that the current

---

[1] Tony further suggested that his income was not sufficient to pay the ordered amount, in part because his ability to work extra jobs had been limited.

3

child support . . . remain the same." The court further ordered Tony to pay Madelyn $3,383.00 plus interest for unreimbursed, out-of-pocket medical expenses. Additionally, the court expressly denied Tony's motion for enforcement and, in response to his Petition for Post-Divorce Division of Property, stated, "It is ordered that the guns are awarded to the person in possession of the guns as of April 1, 2012."

## *Settlement Agreement*

In his first issue, Tony contends that the trial court erred in its final judgment by approving the parties' agreement on child support—and basing his child support obligation on this agreement—after he had withdrawn his consent to the agreement. As set forth above, the record indicates that the parties agreed in mediation to keep the amount of Tony's child support obligation at the amount established in the final decree, but the parties never set that agreement down in writing, and Tony subsequently withdrew his consent and sought a reduction in his child support obligation.[2] Madelyn indeed appears to concede that there was no signed, mediated settlement agreement that could be enforced pursuant to Texas Family Code section 153.0071 regardless of any attempted revocation. Tex. Fam. Code § 153.0071[3]; *see also In re Lee*, 411 S.W.3d 445, 478-79 (Tex. 2013) (Green,

---

[2] Madelyn does not argue that Tony's revocation was not effective.

[3] Section 153.0071 reads in pertinent part as follows:

**Alternate Dispute Resolution Procedures**

**. . . .**

(c) On the written agreement of the parties or on the court's own motion, the court may refer a suit affecting the parent-child relationship to mediation.

(d) A mediated settlement agreement is binding on the parties if the agreement:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

4

J., dissenting) (collecting cases holding that when a mediated settlement agreement meets the requirements of section 153.0071, the agreement can be enforced regardless of party's repudiation); *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012) ("[O]nce signed, an MSA cannot be revoked like other settlement agreements."); *In re L.M.M.*, 247 S.W.3d 809, (Tex. App.—Dallas 2008, pet. denied) (holding mediated settlement agreement met statutory requirements and thus could be enforced despite party's revocation of consent).

Madelyn asserts, however, that when the parties indicated in open court that they had reached an agreement on child support, this announcement constituted a Rule 11 agreement that the trial court was within its authority to approve in the judgment. Tex. R. Civ. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."). The problem with this contention is that if a party revokes its consent to a Rule 11 agreement at any time before judgment is rendered in the case, the agreement can no longer simply be "approved" by the court; instead, the enforcement mechanism is through a separate breach of contract action. *See, e.g., In re Marriage of Dixon*, No. 12-13-00324-CV, 2014 WL 806373, at *2-3 (Tex. App.—Tyler Feb. 28, 2014, no pet. h.) (mem. op.) (holding trial court erred by rendering divorce decree based on Rule 11

---

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

(e) If a mediated settlement agreement meets the requirements of Subsection (d), a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

Tex. Fam. Code § 153.0071. Family Code section 6.602 contains substantially similar language applicable to suits for the dissolution of marriage. *Id*. § 6.602.

agreement where one party had withdrawn consent prior to rendition of judgment); *In re M.A.H.*, 365 S.W.3d 814, 821 (Tex. App.—Dallas 2012, no pet.) (holding trial court erred by enforcing revoked Rule 11 agreement on child support and other matters, and, even assuming a breach of contract claim was raised in relation to revocation of the Rule 11 agreement, the judgment did not contain any ruling thereon); *see also Padilla v. LaFrance*, 907 S.W.2d 454, 461–62 (Tex. 1995) ("[A] court cannot render a valid agreed judgment absent consent at the time it is rendered . . . ."); *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983) (holding that when trial court has knowledge that party does not consent to judgment, trial court should refuse to sanction agreement by making it the judgment of the court).

Here, as set forth above, Tony withdrew his consent to the agreement regarding child support prior to rendition of the judgment.[4] The trial court therefore erred by incorporating that agreement into the final judgment.[5] Accordingly, we sustain Tony's first issue, reverse the portion of the judgment regarding child support, and remand that issue to the trial court for further proceedings.

### *Medical Expenses*

In issue two, Tony contends that the trial court abused its discretion in accepting Madelyn's evidence regarding unreimbursed medical expenses, evidence which Tony maintains was "riddled with errors" and thus factually insufficient.

---

[4] Upon hearing of the settlement, the court stated that they could set the issue aside and concentrate on other matters. The court did not render judgment on the agreement prior to Tony's revocation of consent. *See generally S & A Rest. Corp. v. Leal*, 892 S.W .2d 855, 857-58 (Tex. 1995) (per curiam) (discussing requirements for rendition of judgment).

[5] We note that evidence was introduced on the child support issue. However, the court expressly based its judgment not on that evidence but on the agreement.

6

We review the trial court's ruling on a post-divorce motion for enforcement of a divorce decree under an abuse of discretion standard. *See, e.g., In re Marriage of Kerr*, No. 14–08–00529–CV, 2009 WL 3000977, at *2 (Tex. App.—Houston [14th Dist.] Sept. 22, 2009, no pet.) (mem. op.); *see also In re T.J.L.*, 97 S.W.3d 257, 265 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (applying abuse of discretion standard in reviewing order enforcing payment of child's medical expenses). Under that standard, we must determine "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *In re T.J.L.*, 97 S.W.3d at 266. When, as here, the trial court did not file findings of fact and conclusions of law, we imply that the trial court made all findings necessary to support the judgment and will uphold those findings if supported by sufficient evidence. *In re Kerr*, 2009 WL 3000977, at *2 (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83–84 (Tex. 1992)). Under the abuse of discretion standard, sufficiency of the evidence is not an independent ground of error but rather is a relevant factor in assessing whether the trial court abused its discretion. *In re T.J.L.*, 97 S.W.3d at 266. When, as here, an appellant challenges the factual sufficiency of an adverse finding on an issue for which he did not have the burden of proof, we consider all of the evidence in a neutral light and set aside the judgment only if the evidence that supports the challenged finding is so weak as to make the judgment clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The fact-finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

Rather than discussing the state of the evidence regarding medical expenses as a whole, Tony confines his challenge to a critique of certain statements made by

7

Madelyn during her testimony. Madelyn testified that Tony failed to reimburse her for half of the out-of-pocket medical expenses she paid on behalf of the children. She provided details concerning the requirements in the decree, her payment of medical expenses, her requests for payment to Tony, and his failure to pay. Moreover, Madelyn entered into evidence a list itemizing the expenses, along with supporting receipts, medical statements, and insurance coverage documentation. Lastly, she presented a chart showing Tony's total obligation, what he had paid, and what he still owed. The chart showed Tony owed $3,677.65. After taking certain reductions to this number, the trial court ordered Tony to reimburse Madelyn $3,383.00.

Tony points to the following alleged errors in Madelyn's testimony: (1) she had not updated a website the parties used to keep track of expenses to reflect Tony's last two payments, although she had input those offsets on her chart; (2) she received a $41 reimbursement check in Tony's name but had not yet cashed it; (3) she mistakenly input two duplicate bills on the chart; and (4) she acknowledged credits would occasionally appear on subsequent medical bills from providers. There is no indication in the record, however, that the trial court did not take this testimony, along with Madelyn's explanation or admission, into consideration in deriving the amount awarded for medical reimbursement. To the contrary, each alleged error was discussed openly and apparently considered by the court. Accordingly, we cannot say that the evidence supporting the challenged finding was so weak as to make the judgment clearly wrong and manifestly unjust, *see Cain*, 709 S.W.2d at 175; nor can we say the trial court ruled arbitrarily or unreasonably, *see In re T.J.L.*, 97 S.W.3d at 266. Finding no error in the court's medical reimbursement award, we overrule Tony's second issue.

8

In issue three, Tony contends the trial court abused its discretion in denying his motion to enforce the division of property despite "strong evidence supporting his property claim." In particular, Tony complains that he did not receive all of the property that was in Madelyn's possession at the time of divorce that he was entitled to receive under the decree.[6] Once again, we utilize the abuse of discretion standard in considering this challenge to the trial court's ruling on a post-divorce motion for enforcement, considering Tony's factual-sufficiency contention only as a factor in assessing whether the trial court abused its discretion. *In re T.J.L.*, 97 S.W.3d at 265-66. As movant, Tony had the burden of proof on this issue. *See In re A.L.S.*, 338 S.W.3d 59, 66 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Consequently, to establish factual insufficiency on appeal, he must demonstrate that the court's implied finding Tony failed to prove entitlement to enforcement was against the great weight and preponderance of the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

Tony begins his argument by citing to his own testimony that he made several trips to retrieve his property from Madelyn's residence. On each occasion, he collected some of his property but failed to bring a vehicle large enough to collect all of the remaining items. Tony further testified that on two occasions, he discovered some of his property had been placed along the curb in front of Madelyn's residence as for trash pickup. He further points to two emails Madelyn sent to him during this period of time. In the first email, Madelyn states,

> I just wanted to be sure you were finished with everything in the garage. I am getting ready to clean it out, and didn't want to get rid of

---

[6] We note that Madelyn characterizes the court's ruling on Tony's motion as an unappealable denial of a contempt motion. Although Tony asked for Madelyn to be fined, in addition to specific relief, he does not ask for that relief on appeal.

anything you wanted. There is a computer monitor and some other things in there. Are those things you wanted to throw out?

In the second email, she takes a slightly more aggressive stance, saying:

> I noticed you had gotten items out of my trash and placed them on the end of the driveway in front of the garage door. I will be happy to keep those there until Wed. morning when trash is picked up. If those items are still on the property at that time, I will place them along with my other trash pick up items. In addition, I have someone coming to, hopefully, pick up the big red thing (that is still in the garage) tomorrow. If you want that item, you may want to give me a call and come get it early in the morning. Please call first, though.

Tony asserts—based on his testimony and the emails—that Madelyn's testimony that he retrieved all of the items from the garage he was entitled to receive under the decree was "an impossibility." He does not, however, identify a single specific item or category of items that he did not receive that he was supposed to receive under the decree.[7] Moreover, the mere fact Madelyn may have put certain items Tony wanted (he does not identify what those items were) on the curb and may have threatened to give away other items ("the big red thing," etc.) if he did not collect them, does not directly refute Madelyn's testimony that Tony got everything he was awarded in the decree. *See Fowler v. Fowler*, No. 2-07-274-CV, 2008 WL 2330987, at *3 (Tex. App.—Fort Worth June 5, 2008, no pet.) (mem. op.) (finding trial court did not abuse discretion in denying enforcement where wife did not offer any evidence that husband had refused access to her awarded property and evidence indicated she voluntarily left it behind). As sole judge of the witness's credibility, the trial court was free to accept Madelyn's testimony. *See City of Keller*, 168 S.W.3d at 819.

---

[7] The decree awarded the following items or categories of items in Madelyn's possession to Tony: (1) "Guns," (2) "Gun safe," (3) "Computer equipment for Extrajob.com," and (4) "[A]uto mechanic equipment."

In short, Tony has not demonstrated that the trial court's implied finding regarding his motion for enforcement was against the great weight and preponderance of the evidence or that its ruling was arbitrary or unreasonable. *See Francis*, 46 S.W.3d at 242; *In re T.J.L.*, 97 S.W.3d at 266. Consequently, we overrule Tony's third issue.

## *Modification of Decree*

In his fourth issue, Tony contends that the trial court erred in its Final Order and Judgment because it modified the division of property contained in the divorce decree. Specifically, Tony complains that the court had no jurisdiction to award guns to "the person in possession of them as of April 1, 2012." Tony is correct that while a court that renders a divorce decree retains jurisdiction to clarify and enforce the property division therein, *see Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011), the court does not possess the power to amend, modify, alter, or change the division of property contained in the decree, *see* Texas Family Code § 9.007(a) and (b) and *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003). Tony is incorrect, however, in asserting the trial court in the present case was attempting to amend, modify, alter, or change the division of property contained in the original decree.

As relevant to this issue, in the original decree, the court awarded Tony the guns that were then in Madelyn's possession. As discussed above, the trial court denied Tony's motion seeking recovery of property he asserts she failed to relinquish. The language that Tony complains about in this issue was the court's express ruling on Tony's Petition for Post-Divorce Division of Property. A post-divorce division of property is a procedural vehicle for dividing marital property that was not divided or awarded to a spouse in a final decree of divorce. *See* Tex. Fam. Code §§ 9.201(a), 9.203(a); *see generally O'Carolan v. Hopper*, 414 S.W.3d

11

288, 312-13 (Tex. App.—Austin 2013, no pet.) (discussing purpose of sections 9.201 and 9.203).[8] The trial court's ruling in regards to Tony's Petition for Post-Divorce Division of Property therefore concerned only marital property (guns) not divided in the original decree and consequently did not amend, modify, alter or change the division of property contained in the original decree. Although the record was not particularly well developed regarding whether there were any guns owned during the marriage that were not awarded in the decree, Tony suggested to the judge that guns had gone unawarded.[9] Tony does not raise any arguments, under his fourth issue or otherwise, specifically contending that the trial court erred in dividing previously undivided property. We overrule Tony's fourth issue.

### *Alleged Frivolousness of the Appeal*

As mentioned, Madelyn asserts in her briefing that Tony's appeal was frivolous as defined in Texas Rule of Appellate Procedure 45.[10] In making that determination, we review the record from the viewpoint of the advocate filing the appeal and decide whether the advocate had reasonable grounds to believe the judgment could be reversed. *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc). Here, we have sustained

---

[8] Under section 9.203(a), the court is authorized to divide such undivided property "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code § 9.203(a).

[9] When the subject of guns and other items he claims he did not receive arose, Tony stated: "Well, it was property that was not turned over that was awarded me, and it was property that was not divided. It's two issues." There is also a suggestion in the testimony that Tony had already received some of the guns prior to entry of the decree and that certain guns had been given to children who no longer lived with either party prior to entry of the original decree.

[10] Rule 45, entitled "Damages for Frivolous Appeals in Civil Cases," states:

> If the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

Tony's first issue, necessitating reversal of a portion of the trial court's judgment and remand for further proceedings.  Based on that holding, we determine that Tony's counsel had reasonable grounds to believe the  judgment could be reversed. *See, e.g., Duruji v. Duruji*, Nos. 14-05-01185-CV, 14-05-01186-CV, 2007 WL 582282, at *3 n.8 (Tex. App.—Houston [14th Dist.] Feb. 27, 2007, no pet.) (mem. op.).   Accordingly, Madelyn's request that we determine Tony's appeal to be frivolous and award damages under Rule 45 is denied.

## *Conclusion*

As discussed above, we sustain Tony's first issue challenging the trial court's enforcement of the agreement on child support, reverse the portion of the judgment awarding child support, and remand to the trial court for further consideration of this issue.  We overrule Tony's other issues and affirm the remainder of the trial court's final judgment.


/s/     Martha Hill Jamison
Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jamison.