

# NUMBER 13-19-00193-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**EDNA CORTEZ F/K/A EDNA CHAPA,**                                 **Appellant,**

**v.**

**DAVID CHAPA,**                                                          **Appellee.**

---

### On appeal from the 444th District Court
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Benavides

This appeal arises from a post-divorce proceeding to enforce the division of property. Appellant Edna Cortez f/k/a Edna Chapa contends the trial court abused its discretion in denying her motion to enforce because: (1) the evidence was factually and legally insufficient to show that Edna and appellee David Chapa were jointly and severally

liable for $3.3 million in federal tax liabilities; (2) the trial court misinterpreted the decree's division of tax liabilities; (3) the trial court impermissibly altered the division of property; and (4) the trial court awarded David additional affirmative relief not requested in his pleading. Because we agree the trial court misinterpreted the decree, we reverse and remand.

## I. BACKGROUND

### A. Introduction

Edna and David were divorced in December 2009. The trial court awarded David the primary asset of the marital estate, Chapita's Restaurant, as his sole and separate property. However, David was required to pay Edna $928,408 for her 50% interest in the restaurant. The decree included a payment schedule that required David to make an initial payment of $50,000, monthly payments of $7,065 for seven years, and a final balloon payment of $547,916.

David made the initial payment and monthly payments in accordance with the decree for a total of $643,460, but he did not make the final balloon payment of $547,916 when it became due.[1] Edna filed a suit to enforce the property division, seeking a money judgment for the balance owed. During the pendency of the case, David continued to make monthly payments in the amount of $10,000 from January 2017 until September 2017, bringing his total payments up to $733,460.

---

[1] Under the decree, the balance remaining after the initial payment was "to be paid on a 15 year amortization schedule earning interest at the New York prime rate plus 2%." Thus, the total owed under the payment schedule, if all payments were made timely, was nearly $1.2 million.

In response to the enforcement action, David acknowledged his unsatisfied obligation to Edna under the decree but filed a "crossclaim" asking the trial court to award him "credit" for half of any amount he has paid to the Internal Revenue Service (IRS) on behalf of the parties. According to David, approximately six months after the divorce, the IRS audited the business and determined that Edna and David were jointly and severally liable for federal taxes in the total amount of $3.3 million for the years 2007, 2008, and 2009.

## B.    The Divorce Decree

The parties dispute the significance of the following provisions in the decree:

Debts to Husband

IT IS ORDERED AND DECREED that the husband, David Chapa, shall pay, as part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

. . . .

H-6.    All encumbrances, ad valorem taxes, liens, assessments, or other charges to become due on the real property and personal property awarded to the husband in this decree unless express provision is made in this decree to the contrary.

. . . .

Taxes

IT IS ORDERED AND DECREED that [$]116,000.00 is to be paid immediately to the [IRS] for outstanding taxes due for the 2008 tax year. The [$]116,000.00 is to be paid out of the IBC CD in the amount of [$]170,000.00.

Treatment/Allocation of Community Income for Year of Divorce

3

IT IS ORDERED AND DECREED that, for the calendar year 2009; each party shall file an individual income tax return in accordance with the Internal Revenue Code.

## C.     The Hearing

Both parties testified during the final hearing on March 6, 2019. David testified that approximately six months after the divorce, the IRS audited the restaurant for the years 2007 through 2009 and ultimately determined that he and Edna jointly owed approximately $3 million in federal income taxes and approximately $300,000 in "employee back tax." David estimated that he had already paid the IRS approximately $650,000 in the form of cash payments, and the IRS seized property worth $250,000:

> [COUNSEL]:      Okay. And out of the $3,300,000.00, how much have you paid back to the IRS so far?
>
> [DAVID]:          Approximately $650,000.00.
>
> [COUNSEL]:      Okay. And out of that $650,000.00, was it all direct money paid? Or did the IRS take properties from you?
>
> [DAVID]:          They did seize property due to the fact that some of the [$]300,000 that was owed, were for 940, 941 back taxes for employees. And those, they do require immediate payment. So what they did was they seized a property that I was awarded during the divorce.
>
> [COUNSEL]:      Okay. And that property, what would you say it was worth?
>
> [DAVID]:          I believe it was worth $250,000.00.
>
> [COUNSEL]:      So they took that property from you?
>
> [DAVID]:          Yes. Plus another $80,000.00, I believe, in cash in payment.

He further testified that all his properties, including the restaurant, are encumbered by IRS liens. According to David, "the IRS notified me, well, go ahead and make the

4

payments that you're making to her, go ahead and start sending them to us. So that's why, I couldn't pay her and the IRS at the same time. So I started paying the IRS."

Edna acknowledged that she received correspondence from the IRS stating that she and David were jointly liable for approximately $1.6 million in taxes for the years 2007 and 2008. When asked whether she was liable for the 2007 and 2008 taxes, Edna responded, "Yes." She agreed that she was unaware of those liabilities at the time of the divorce. She also acknowledged that she had hired someone to represent her concerning her tax liabilities and that she had not paid any amount toward the $1.6 million owed from 2007 and 2008. Edna had no knowledge of whether the IRS considered her jointly liable for 2009, saying she was only aware of the 2007 and 2008 tax liabilities.

During closing arguments, David's counsel asked the trial court to credit half the payments his client made to the IRS towards his unpaid obligation under the decree. Edna's counsel responded that David may be entitled to a 50% contribution for his IRS payments, but he did not believe the trial court could address any such relief in this proceeding: "And if he files a Chapter C proceeding, which this is not, as Section 9.004 clearly says, if he wants to litigate that, he's free to do it. He can't do it here. And if you do it, your order would be void."

The trial court asked Edna's counsel whether he was inviting David to sue his client in a separate proceeding, and he responded, "Go ahead." When the court asked why that would be advisable for his client, he explained, "Well, because it is the only form in which they can do it." He added, "they cannot raise this in this Chapter 9 proceeding."

**D.** **David's Motion to Enforce**

Five days later, David filed a combined "Motion to Enforce Property Divisions and/or for Reimbursement to the Separate Estate of David Chapa for Payment of Community Property Debt and/or Motion to Divide Debt of the Community Property and/or Motion for Clarification." In the motion to enforce portion, he argued that the decree divided equally all tax liabilities for the years prior to 2009, and he requested "that he be awarded and/or given credit in an amount of 1/2 of any amounts that he has paid toward the IRS lien/assessment against both parties for taxes on the restaurant prior to 2009 toward the $547,916 and for credit in the amount of 1/2 of any future payments made to the IRS in this regard."

Alternatively, in his motion for a division of undivided assets/liabilities, he argued that the decree did not dispose of the unknown tax liabilities for 2007 and 2008, and he asked the court to "divide this debt in a just and equitable manner, pursuant to Tex. Fam. Code section 9.203." Pleading further in the alternative, David also alleged that Edna "has been unjustly enriched by the payments made by David Chapa to the IRS."

**E.** **The Judgment**

On March 29, 2019, the trial court signed an "Order on Motion for Enforcement of Property Division." Based on a finding that David had paid $980,000 from his separate estate toward Edna and David's joint federal tax liabilities, the court awarded David a $499,000 "credit" toward the $546,916 he owed Edna. The trial court further ordered the $48,916 balance withheld from Edna and that David "shall be given credit against that balance for 1/2 of any future payments." Finally, after the balance is satisfied, the court

6

ordered Edna to reimburse David for half of all future payments he makes to the IRS "for taxes on the restaurant known as Chapita's for all years during the marriage."

**F.    FOF & COL**

Upon Edna's request, the trial court entered, among others, the following findings of fact and conclusions of law:

<u>Findings of Fact</u>

. . . .

7.    [Edna] was ordered to pay for 1/2 of any and all taxes due for the years during the marriage, which included taxes on the restaurant known as Chapita's.

8.    After the date of the divorce, pursuant to an audit initiated by [Edna], the IRS levied taxes in the amount of Three Million Three Hundred Thousand Dollars ($3,300,00.00) for taxes on the restaurant known as Chapita's for years during the marriage.

9.    As of 3/21/19, [David] has paid the amount of Nine Hundred Eighty Thousand Dollars ($980,000.00), from his separate estate for taxes on the restaurant known as Chapita's for years during the marriage.

. . . .

<u>Conclusions of Law</u>

. . . .

14.    The Final Decree of Divorce decreed that all taxes for any years during the marriage were to be divided equally between the parties.

. . . .

16.    [David] and [Edna] are jointly and severally liable for the IRS taxes due on the restaurant known as Chapita's for years during the marriage.

17.    [Edna] is liable to [David] for 1/2 of any amounts that he has paid the IRS for taxes due on the restaurant known as Chapita's for years during the marriage.

7

18.    [David] is entitled to an offset of 1/2 of any amounts that he has paid the IRS for taxes due on the restaurant known as Chapita's for years during the marriage in the sum of Four Hundred Ninety Thousand Dollars ($499,000.00) [sic] against the $547,916.00 awarded to [Edna] for her 1/2 interest in the restaurant known as Chapita's.

Edna filed a post-judgment motion complaining that (1) the trial court substantively altered the decree by re-dividing the parties' tax liabilities, and (2) the judgment exceeded the pleadings because David never requested that Edna reimburse him for half of any future payments made to the IRS. The motion was denied by operation of law, and this appeal ensued.

## II.    SUFFICIENCY OF THE EVIDENCE

By her first issue, Edna complains that the evidence was legally and factually insufficient to support the trial court's findings and conclusions that Edna and David were jointly and severally liable for the federal tax liabilities from 2007 to 2009. Edna reasons that if David failed to prove her joint liability, then no basis exists to offset her claim, and we should reverse and render a judgment in her favor.

## A.    Standard of Review

We review the trial court's ruling on a post-divorce motion for enforcement for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Beshears v. Beshears*, 423 S.W.3d 493, 499 (Tex. App.—Dallas 2014, no pet.); *Thomas v. Piorkowski*, 286 S.W.3d 662, 665 (Tex. App.—Corpus Christi–Edinburg 2009, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *McAllen Hosps., L.P. v. Gonzalez*, 566 S.W.3d 451, 455–56 (Tex. App.—

8

Corpus Christi–Edinburg 2018, no pet.) (citing *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 911 (Tex. 2017)).

Under the abuse of discretion standard, sufficiency of the evidence is not an independent ground of error but rather is a relevant factor in assessing whether the trial court abused its discretion. *Woody v. Woody*, 429 S.W.3d 792, 797 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Scoggins v. Trevino*, 200 S.W.3d 832, 836 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.). In an appeal from a bench trial, the trial court's findings of fact have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.); *Taiwan Shrimp Farm Village Ass'n v. U.S.A. Shrimp Farm Dev., Inc.*, 915 S.W.2d 61, 70 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied). Thus, we review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used to determine if sufficient evidence exists to support an answer to a jury question. *Fulgham*, 349 S.W.3d at 157; *Taiwan Shrimp Farm*, 915 S.W.2d at 70.

A no-evidence challenge to the legal sufficiency of the evidence will be sustained only if: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *Dall. Nat'l Ins. Co. v. De Law Cruz*, 470 S.W.3d 56, 57 (Tex. 2015) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)). In reviewing the evidence for legal sufficiency, "we credit evidence

that supports the verdict if [a reasonable factfinder] could have done so and disregard contrary evidence unless [a reasonable factfinder] could not have done so." *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (quoting *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009)). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *see also King Ranch, Inc. v. Chapman*,118 S.W.3d 742, 751 (Tex. 2003) (explaining that more than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions"). If there is some evidence to support the challenged finding, then the appellate court will review the claim of factual insufficiency by weighing all the evidence in the record to determine whether the evidence supporting the finding is so contrary to the overwhelming weight of the evidence that the finding is clearly wrong and should be set aside as manifestly unjust. *Fulgham*, 349 S.W.3d at 157.

A trial court's conclusions of law are reviewed de novo. *BMC Software*, 83 S.W.3d at 794. A trial court's conclusions of law may not be challenged for factual insufficiency; only the trial court's conclusions drawn from the facts may be reviewed for correctness. *Id.* Further, a trial court's conclusions of law are not reviewable on the basis that there is legally insufficient evidence to support them. *Aldrich v. State ex rel. Cox*, 658 S.W.2d 323, 327 (Tex. App.—Tyler 1983, no writ); *see also Farkas v. Aurora Loan Servs., L.L.C.*, No. 05-15-01225-CV, 2017 WL 2334235, at *4 (Tex. App.—Dallas May 30, 2017, pet. denied) (mem. op.). "If the reviewing court determines a conclusion of law is erroneous, but the

trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *BMC Software*, 83 S.W.3d at 794.

## B.    Analysis

Edna complains there was no evidence and factually insufficient evidence to support the trial court's finding that "[a]fter the date of divorce, pursuant to an audit initiated by Edna Chapa, the IRS levied taxes in the amount of Three Million Three Hundred Thousand Dollars ($3,300,000.00) for taxes on the restaurant known as Chapita's for years during the marriage." Although Edna acknowledges that David testified to these very facts, she nonetheless describes his testimony as an "unqualified, rank conclusion."

Edna mischaracterizes David's testimony. He did not opine about the audit based on his specialized knowledge, skill, experience, training, or education. *See* TEX. R. EVID. 702. Instead, he merely described, without objection, the results of the audit based on his personal knowledge:

| [COUNSEL]: | It wasn't until after the divorce that an audit of Chapita's Restaurant came to fruition and caused a tax bill, correct? |
|---|---|
| [DAVID]: | Yes. |
| [COUNSEL]: | And when was the audit done, more or less? |
| [DAVID]: | I believe it was like six months after the divorce was finalized. |
| [COUNSEL]: | And as a result of that audit, how much—what years were audited? |
| [DAVID]: | They [sic] IRS went in and advised me and [Edna] that they were going to audit 2007, 2008[,] and 2009, and |

11

> we could both be present during the audit. Which she chose not to be there.
>
> . . . .
>
> [COUNSEL]: And as a result of that audit, what did the IRS determine?
>
> [DAVID]: The final amount that they figured that we owed was in federal income, it was close to $3 million. And I believe employee tax back tax was close to $300,000.

*See Niche Oilfield Servs., LLC v. Carter*, 331 S.W.3d 563, 571 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (explaining that unobjected-to hearsay may be considered in analyzing the sufficiency of the evidence supporting a jury verdict (citing *City of Keller*, 168 S.W.3d at 812 n.29)). Thus, it was the IRS, not David, that determined that Edna was jointly and severally liable.

Moreover, Edna largely corroborated David's testimony. She testified that she and David filed joint tax returns for the years 2007 and 2008 and that the IRS notified her that she was jointly liable for $1.6 million in federal taxes for those years. When directly asked whether she was liable for these taxes, she responded, "Yes."[2] The only part of David's testimony she did not explicitly agree with concerned the 2009 tax year, saying she was "not aware" of any joint liability for that year. David testified otherwise, and as the trier of

---

[2] Attached to one of David's filings in the trial court is a copy of an agreed decision from a United States Tax Court in which Edna agreed that she was "not entitled to relief under I.R.C. § 6015 (b), (c), or (f) with respect to her income tax liabilities for tax years 2007 and 2008" as an innocent spouse signing a joint tax return. However, the decision was not entered into evidence, and David did not ask the trial court to take judicial notice of the decision. Therefore, we do not consider it in our analysis. *See Shah v. Star Anesthesia, P.A.*, 580 S.W.3d 260, 266 (Tex. App.—San Antonio 2019, no pet.) ("Our duty, as an appellate court, is to consider only the testimony adduced and the evidence tendered and/or admitted at the time of trial." (quoting *Vanscot Concrete Co. v. Bailey*, 862 S.W.2d 781, 783 (Tex. App.—Fort Worth 1993), *aff'd*, 894 S.W.2d 757 (Tex. 1995))).

fact, the trial court was free to credit David's testimony over Edna's testimony regarding the outcome of the audit. *See George Joseph Assets, LLC v. Chenevert*, 557 S.W.3d 755, 765 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.). Edna's first sub-issue is overruled.

Edna also complains about the factual and legal sufficiency of the evidence supporting the trial court's conclusion that "[David] and [Edna] are jointly liable for the IRS taxes due on the restaurant known as Chapita's for years during the marriage." However, conclusions of law are not reviewable for factual or legal sufficiency; only the trial court's conclusions drawn from the facts may be reviewed for correctness. *BMC Software*, 83 S.W.3d at 794; *Aldrich*, 658 S.W.2d at 327. We can draw a straight line from the evidence cited above to the trial court's conclusion concerning the parties' joint federal tax liabilities. *See BMC Software*, 83 S.W.3d at 794. Further, a decree's division of joint obligations does not diminish or limit the right of creditors to proceed against either or both ex-spouses. *See, e.g.*, *Blake v. Amoco Fed. Credit Union*, 900 S.W.2d 108, 111 (Tex. App.—Houston [14th Dist.] 1995, no writ). Rather, the decree merely divides the responsibility for repayment as between the parties and affects only their rights to seek contribution from each other in satisfaction of their joint obligation. *Id.* We overrule Edna's first issue.

### III. THE DIVISION OF TAX LIABILITIES

By her second issue, Edna argues that the trial court misinterpreted the decree's division of tax liabilities. She contends that under the decree, David is "liable for all taxes associated with the restaurant." The trial court reached a different conclusion: "The Final Decree of Divorce decreed that all taxes for any years during the marriage were to be

13

divided equally between the parties." We find that neither interpretation is correct.

## A.    Standard of Review & Applicable of Law

"The same rules of interpretation apply in ascertaining the meaning of judgments as in ascertaining the meaning of other written instruments."[3] *Treadway v. Shanks*, 110 S.W.3d 1, 6 (Tex. App.—Dallas 2000, pet. granted), *aff'd*, 110 S.W.3d 444 (Tex. 2003) (citing *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971)). Whether a written instrument is ambiguous is a question of law. *Pathfinder Oil & Gas, Inc. v. Great Western Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019. ). "A document is ambiguous only when the application of pertinent rules of interpretation results in genuine uncertainty as to which one of two or more meanings is proper." *Treadway*, 110 S.W.3d at 6 (citing *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)). A written instrument "is not ambiguous simply because the parties disagree over its meaning." *Dynegy Midstream Servs., Ltd. P'shp v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009) (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).

If the written instrument can be given a certain or definite legal meaning or interpretation, then there is no ambiguity, and the court will construe the instrument as a matter of law. *Pathfinder*, 574 S.W.3d at 889; *Coker v. Coker*, 605 S.W.2d 391, 393 (Tex. 1983). Our primary objective is to give effect to the instrument's written expression. *URI,*

---

[3] Contrary to Edna's repeated assertion in her brief, there is nothing in the decree to indicate that it represents an agreement between the parties. Rather, the divorce decree contains a provision stating that the final hearing was contested before a jury. Further, the parties signed the decree with the disclaimer that they were approving the form of the decree but not its substance. Nevertheless, whether the parties agreed to the decree has no bearing on our interpretation of the instrument; agreed judgments are subject to the same well-known rules of construction as other written instruments. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2020).

*Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)). "[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not." *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) (citing *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998)). We interpret the language of a written instrument "according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise." *URI, Inc.*, 543 S.W.3d at 764 (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

## B.    Interpreting the Decree

Under the decree, each party was ordered to pay "[a]ll encumbrances, ad valorem taxes, liens, assessment, or other charges *to become due* on the real and personal property awarded to [the party] in this decree unless express provision is made in this decree to the contrary." (Emphasis added). The decree, rendered on December 18, 2009, also required each party to file a separate tax return for the year 2009. Federal income taxes for a particular year become due at the time the taxpayer is required to file their tax return, typically on April 15 of the following year. 26 U.S.C. § 6151(a); *In re Vines*, 200 B.R. 940, 947 (M.D. Fla. 1996); *United States v. Thomassen*, 610 F. Supp. 386, 391–92 (D. Neb. 1985); *United States v. Ressler*, 433 F. Supp. 459, 463 (S.D. Fla. 1977), *aff'd* 576 F.2d 650 (5th Cir. 1978). Thus, under the plain language of the decree, David was required to pay any federal income tax liabilities arising out of the operation of the restaurant in 2009 because they became due after the divorce. Moreover, the decree required him to indemnify and hold Edna and her property harmless from any failure to

15

discharge those liabilities. Accordingly, under the plain language of the decree, any payments David made towards their 2009 joint tax liabilities cannot be credited toward his unpaid obligation to Edna.

Conversely, the 2007 and 2008 tax liabilities had already become due *before* the decree was rendered on December 18, 2009, regardless of whether the parties knew the full extent of those liabilities at the time of the divorce. *See* 26 U.S.C. § 6151(a). Therefore, under the same plain language, David is not "liable for all taxes associated with the restaurant," as Edna suggests.

David argues—and the trial court agreed—that because the decree specifically provides for the payment of $116,000 in known tax liabilities for the year 2008 from community funds, all tax liabilities incurred during the marriage, both known and unknown, were necessarily divided evenly between the parties. The provision in question provides that: "[$]116,000.00 is to be paid immediately to the [IRS] for outstanding taxes due for the 2008 tax year. The [$]116,000.00 is to be paid out of the IBC CD in the amount of [$]170,000.00." We fail to see how this narrow language divides $3.3 million in unknown tax liabilities for the years 2007, 2008, and 2009.

If these liabilities had been known at the time of the divorce, it stands to reason that the marital estate would have been divided differently. *See Bush v. Bush*, 336 S.W.3d 722, 740 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Debts and liabilities incurred jointly by the spouses, such as federal income tax liabilities, must be considered by the trial court in determining a just and right division of the community estate and must be apportioned to one or both of the spouses." (*citing In re S.A.A.*, 279 S.W.3d 853, 857

16

(Tex. App.—Dallas 2009, no pet.))). However, it would be improper for us to speculate about how the estate would have been divided; we can only interpret the existing language in the decree, and the language David relies on does not provide for the division of any unknown tax liabilities. *See Fiess*, 202 S.W.3d at 746 ("[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not." (citing *Balandran*, 972 S.W.2d at 741)). Our interpretation gives effect to every provision in the division of the marital estate without adding terms that do not exist. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2020). Simply put, the unknown tax liabilities for 2007 and 2008 are undivided liabilities of the marital estate.

While we agree with Edna that the trial court's interpretation of the decree was erroneous, and thus constitutes an abuse of discretion, we also reject Edna's alternative interpretation. Accordingly, we sustain Edna's second issue in part.

## IV. DAVID'S RIGHT TO AN OFFSET

By her third issue, Edna argues that providing David with any offset impermissibly alters the division of the marital estate. *See* TEX. FAM. CODE ANN. § 9.007(a) (explaining that, in an enforcement suit, "[a] court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce"). We disagree. As we have already concluded, the unknown 2007 and 2008 tax liabilities were not divided by the decree in the first instance and therefore are not subject to this limitation. Indeed, the family code specifically provides for a post-decree procedure "to divide property not divided or awarded to a spouse in a final decree." *Id.* § 9.201(a). It is unclear whether this post-divorce procedure for undivided "property" also includes undivided liabilities. *See id.* At

17

least one of our sister courts has concluded that a court has authority under the statute to apportion undivided liabilities overlooked by the decree. *Lajzerowicz v. Lajzerowicz*, No. 04-16-00491-CV, 2018 WL 626593, at *5 (Tex. App.—San Antonio Jan. 31, 2018, pet. denied) (mem. op.). We note that this is the same position Edna took in the trial court, telling the trial court at the final hearing that David had this specific right to relief, which had not been pleaded at the time but was raised in a post-hearing amendment before the final judgment. Now, on appeal, David argues those proceedings are limited to undivided property.

We need not decide the issue here. David has consistently maintained throughout the course of the proceedings that he was entitled to a "credit" for half of any payments he made to the IRS on behalf of the parties' joint liability. In fact, his right to offset Edna's enforcement claim was the primary issue throughout the course of the proceeding. Edna has not pointed us to any authority that would prohibit David from raising this affirmative defense, and we have found none. *See Tenet Health Sys. Hosps. Dall., Inc. v. N. Tex. Hosp. Physicians Group, P.A.*, 438 S.W.3d 190, 204 (Tex. App.—Dallas 2014, no pet.) (explaining that the right of offset is an affirmative defense (citing *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex.1980))). Rather, enforcement suits are generally "governed by the Texas Rules of Civil Procedure applicable to the filing of an original lawsuit," *see* TEX. FAM. CODE ANN. § 9.001(b), including a respondent's right to raise an affirmative defense. *See, e.g., Moore v. Moore*, 568 S.W.3d 725, 730–32 (Tex. App.—Eastland 2019, no pet.) (affirming trial court's enforcement order because ex-husband failed to prove his affirmative defenses of waiver, estoppel, and laches). We

have already concluded that David provided sufficient evidence that he made significant payments to the IRS on behalf of the parties' joint tax liability; therefore, we overrule Edna's third issue.

What is unclear, however, is how those payments were applied by the IRS. Although Edna testified that the 2007 and 2008 joint tax liabilities totaled $1.6 million, only payments made on the 2007 and 2008 tax liabilities are eligible to offset Edna's claim, and we cannot determine from the record whether David's payments were made toward the 2007 and 2008 tax liabilities, the 2009 tax liabilities, or some combination thereof. We also cannot determine from the record what portion, if any, of the $1.6 million in tax liabilities for 2007 and 2008 include penalties and interest and whether those portions became due before or after the divorce. Thus, we cannot affirm a modified judgment on the record before us. Instead, we must reverse the judgment and remand the case to the trial court to determine these factual issues and any others it deems appropriate, keeping in mind that the key inquiry is whether the tax liabilities became due before or after the divorce was rendered.

## V.    SUMMARY

The trial court abused its discretion when it erroneously concluded that "[t]he Final Decree of Divorce decreed that all taxes for any years during the marriage were to be divided equally between the parties." Any payments David made towards their 2009 joint tax liabilities cannot be credited toward his unpaid obligation to Edna because those liabilities were assigned to David under the decree. The unknown 2007 and 2008 tax liabilities were not divided by the decree, but David may seek an offset for half of any

19

payments he made towards those liabilities that became due before the decree was rendered.

## VI. CONCLUSION

The judgment is reversed, and the case is remanded to the trial court for proceedings consistent with this memorandum opinion.[4]

GINA M. BENAVIDES
Justice

Delivered and filed the
14th day of January, 2021.

---

[4] Because we are reversing the judgement, we do not reach Edna's fourth issue that the trial court granted David additional affirmative relief not requested in his pleading. *See* TEX. R. APP. P. 47.1.